OPINION




No. 04-02-00807-CV



Steven C. GRINNELL,


Appellant



v.



David M. MUNSON, Nueces Minerals Co., and Tri-County Royalty Trust,


Appellees



From the 218th Judicial District Court, La Salle County, Texas


Trial Court No. 00-05-00036-CVL


Honorable Olin B. Strauss, Judge Presiding



Opinion by: Phylis J. Speedlin, Justice


Sitting: Sarah B. Duncan, Justice 

 Sandee Bryan Marion, Justice

 Phylis J. Speedlin, Justice


Delivered and Filed: April 28, 2004


AFFIRMED

 Steven C. Grinnell ("Grinnell") appeals the summary judgments granted in favor of David
M. Munson ("Munson"), Nueces Minerals Co. ("Nueces Minerals"), and Tri-County Royalty Trust
("Tri-County"). Grinnell also appeals the trial court's denial of his motion for summary judgment.
Grinnell challenges the trial court's order in three broad issues addressing: (1) the denial of his
motion; (2) the granting of the motion filed by Munson and Nueces Minerals; and (3) the granting
of the motion filed by Tri-County. We affirm the trial court's orders.

Background


 In 1998, Grinnell purchased the surface estate to 15,398.22 acres of land commonly known
as the Herradura Ranch (the "Ranch"). Five oil and gas leases were in place at the time of Grinnell's
purchase, referred to as the "A," "B," "D," "E," and "F" Leases. In addition to obtaining the surface
estate, Grinnell acquired 3,368 units of interest in Tri-County, which was approximately 1% of the
total units of interest; however, Grinnell's acquisition of these units of interest was not documented
until a certificate was issued to him on April 4, 2001.

 Nueces Minerals owns 100% of the Ranch's executive mineral rights, giving Nueces
Minerals the exclusive right to lease the minerals under the Ranch. Tri-County owns 90% of the
non-executive royalty interests, and Nueces Minerals owns the remaining 10%. 

 In May of 2000, GGG Oil Co. ("GGG"), the lessee under the oil and gas leases, sued
Grinnell, claiming that he damaged the aircraft runway that the leases entitled GGG to maintain on
the Ranch. Grinnell answered and filed a counterclaim alleging numerous causes of action against
GGG and seeking a declaratory judgment that the oil and gas leases had terminated due to the lack
of production in paying quantities. Grinnell subsequently amended his pleadings to include claims
for an accounting and for breach of fiduciary duty against Nueces Minerals, Munson (the president
of Nueces Minerals), and Tri-County.

 Grinnell moved for summary judgment on the ground that the leases had terminated. Nueces
Minerals and Munson also filed a no-evidence motion for summary judgment, asserting that there
is no evidence that they owed Grinnell a fiduciary duty or an accounting. Tri-County later filed a
separate motion for summary judgment, contending it was entitled to judgment as a matter of law
because Grinnell had been provided an accounting and there was no evidence of any breach of the
trust agreement that would give rise to any cause of action. The trial court denied Grinnell's motion
and granted the motions filed by Nueces Minerals, Munson, and Tri-County. The rulings on the
motions were severed into a separate cause of action, and Grinnell filed this appeal.

Standard of Review


 When both sides move for summary judgment and the trial court grants one motion and
denies the other, the reviewing court should review both sides' summary judgment evidence and
determine all questions presented. FM Properties Operating Co. v. City of Austin, 22 S.W.3d 868,
872 (Tex. 2000) When a trial court's order granting summary judgment does not specify the grounds
relied upon, the reviewing court must affirm the summary judgment if any of the summary judgment
grounds are meritorious. Id. at 872-73.

 Under traditional summary judgment standards, a party moving for summary judgment has
the burden of establishing that no genuine issue of material fact exists and that the party is entitled
to judgment as a matter of law. Casso v. Brand, 776 S.W.2d 551, 556 (Tex. 1989); Nixon v. Mr.
Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985). In reviewing a summary
judgment, an appellate court accepts as true all evidence supporting the non-movant. Nixon, 690
S.W.2d at 549. All inferences are indulged in favor of the non-movant, and all doubts are resolved
in his favor. Id.

 We apply the same legal sufficiency standard in reviewing a no-evidence summary judgment
as we apply in reviewing a directed verdict. Moore v. K Mart Corp., 981 S.W.2d 266, 269 (Tex.
App.--San Antonio 1998, pet. denied). We look at the evidence in the light most favorable to the
respondent against whom the summary judgment was rendered, disregarding all contrary evidence
and inferences. Id. A no-evidence summary judgment is improperly granted if the respondent
brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. Id.
Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create
a mere surmise or suspicion of a fact. Id. More than a scintilla of evidence exists when the evidence
rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.
Id.

Grinnell's Motion


 In response to Grinnell's motion for summary judgment seeking a declaration that the oil and
gas leases had terminated, Nueces Minerals and Munson asserted that Grinnell lacked standing to
seek declaratory relief regarding the leases, the leases were ratified, three of the leases were subject
to a Unit Agreement, and that genuine issues of material fact existed with regard to whether the
leases were producing in paying quantities.

A. Standing

 The first basis on which the trial court may have granted summary judgment was the
contention that Grinnell lacked standing to seek a declaration that the leases had terminated. (1)

 The general rule is that only the parties to a contract have the right to complain of a breach
thereof; and if they are satisfied with the disposition that has been made of it and all claims under
it, a third person has no right to insist that it has been broken. Tennessee Gas Pipeline Co. v. Lenape
Resources Corp., 870 S.W.2d 286, 295 (Tex. App.--San Antonio 1993), aff'd in part and rev'd in
part on other grounds, 925 S.W.2d 565 (Tex. 1996); Bruner v. Exxon Co., U.S.A., 752 S.W.2d 679,
682 (Tex. App.--Dallas 1998, writ denied). An exception to this rule is that one who is not in
privity to the written agreement may show that he is eligible to bring an action on the contract as a
third-party beneficiary. Lenape, 870 S.W.2d at 295; Bruner, 752 S.W.2d at 682. The fact that a
person might receive an incidental benefit from a contract to which he is not a party does not give
that person a right of action with regard to the contract. MCI Telecommunications Corp. v. Texas
Utilities Elec. Co., 995 S.W.2d 647, 651 (Tex. 1999). A third party only has standing if the parties
intended to secure some benefit to that third party, and only if the contracting parties entered into the
contract directly for the third party's benefit. Id. "To qualify as one for whose benefit the contract
was made, the third party must show that he is either a donee or creditor beneficiary of, and not one
who is benefitted only incidentally by the performance of, the contract." Id. "One is a donee
beneficiary if the performance promised will, when rendered, come to him as a pure donation." Id.
"If, on the other hand, that performance will come to him in satisfaction of a legal duty owed to him
by the promisee, he is a creditor beneficiary." Id.

 In analyzing whether Grinnell has standing, this court's decision in Lenape is instructive.
In Lenape, the appellant, Tennessee Gas Pipeline Co. ("Tennessee"), was a party to a Gas Purchase
Agreement ("GPA") with Lenape Resources Corp. ("Lenape"). 870 S.W.2d at 290. Pursuant to the
terms of the GPA, Tennessee agreed to buy, and Lenape agreed to sell, all gas produced from
committed reserves located in and under various oil and gas leases, including leases from the Fantina
Yzaguirre Gas Unit. Id. In 1989, the lessors of the Fantina Yzaguirre Gas Unit sued Lenape alleging
that the leases had terminated because of failure to produce in paying quantities. Id. The parties
settled the dispute and confirmed the leases. Id. Tennessee later brought suit alleging numerous
claims against Lenape. Id. at 291. The trial court granted a partial summary judgment, concluding,
in relevant part, that Tennessee lacked standing to challenge the validity of the underlying leases.
Id. Our court agreed, reasoning:

 Tennessee is not a party to the leases, nor do the leases make any mention of
Tennessee. Indeed, the leases were executed many years before Tennessee acquired
its rights under the GPA. Obviously, the parties to the leases did not intend that they
be made for Tennessee's benefit. At most, Tennessee is an incidental beneficiary of
the leases with no right to claim that they had terminated. The fact that its
obligations under the GPA may be affected by the leases has no effect on whether it
has standing to contest those leases. Appellee demonstrated by means of the
settlement agreement that the actual parties to the leases were satisfied that the leases
had not terminated and Tennessee has no right to insist otherwise.


Id. at 295.

 In reaching this holding, our court relied on the Dallas court's holding in Bruner. In that
case, Fred Bruner brought suit against Exxon Company, U.S.A. as lessee and The Southland
Corporation as lessor claiming that they wrongfully cancelled a lease for which Bruner had a written
assignment of rentals. Bruner, 752 S.W.2d at 680. In exchange for negotiating the lease,
Southland's predecessor in interest executed a written assignment of rentals which required Exxon's
predecessor in interest to pay a specific portion of the rentals directly to Bruner. Id. Exxon and
Southland subsequently entered into a lease termination agreement, ending the lease and Bruner's
assigned rentals. Id. In holding that Bruner was an incidental beneficiary without standing to
challenge the termination, the court reasoned:

 [T]he lease agreement makes no mention of Bruner or the assignment of rentals.
Bruner is merely an incidental beneficiary: a casual assignee. He has no right to
complain of the termination of the lease between the lessor and the lessee. Further,
the assignment of rentals, which incorporates the terms and conditions of the lease,
does not give Bruner any additional right to control the disposition of the lease. ...
The Assignment merely directs Humble [Exxon's predecessor] to pay Bruner the
applicable rentals for "the life of the lease" and nothing more.


Id. at 683.

 In addition to owning the surface estate, Grinnell owns a 1% interest in Tri-County, which
owns 90% of the non-executive royalty mineral interests. Munson's affidavit explains that a non-executive royalty interest is "an ownership interest in minerals but without any surface rights and
with no right to execute oil and gas leases." The El Paso court has explained the nature of this type
of interest as follows:

 We think the non-participating royalty owners are not necessary and indispensable
parties to the suit, because as such their right was only to receive their royalty when
and if produced. By the terms of the royalty conveyance the owners had the
exclusive right to make a new lease without the joinder or consent of the royalty
owners, and such royalty owners were not entitled, under the terms of the
conveyance, to receive any part of the bonus or rentals. Their right or rights was
limited to the receipt of the one-sixteenth royalty. Prior to the trial of this suit the
royalty owners had received and were receiving their royalty from the wells drilled
on the lands, including three wells located on the 80-acre tract. They had nothing to
do with the making of the lease nor the continuation thereof. If the lease be valid
they were entitled to receive their royalty. If it be invalid they had no right to its
perpetuation.


Magnolia Petroleum Co. v. Storm, 239 S.W.2d 437, 438 (Tex. Civ. App.--El Paso 1950, writ ref'd
n.r.e.). Although the El Paso court was addressing a different issue, its analysis of the nature of a
non-participating royalty owner's interest is helpful in determining whether Grinnell has standing.

 As the owner of the surface estate, Grinnell clearly does not have standing. Grinnell is not
a party to the leases and, unquestioningly, the oil and gas leases were not intended to benefit him in
his capacity as the surface owner. 

 Similarly, we conclude that Grinnell does not have standing based on his interest in Tri-County. Grinnell's ownership interest in Tri-County only entitles him to receive a proportionate
share of the royalties when they are paid to Tri-County. This does not give him the status of a donee
beneficiary or a creditor beneficiary. Nueces Minerals is only obligated to pay royalties to Tri-County, not to Grinnell. At most, Grinnell might be considered an incidental beneficiary, which
does not confer him with standing.

 In his pleadings, Grinnell appears to be contending that he has standing to bring the lawsuit
due to a conflict of interest that exists between Tri-County's trustee and himself with regard to
pursuing the declaratory relief. A beneficiary is authorized to enforce an action when the trustee
cannot or will not enforce it. Interfirst Bank-Houston, N.A. v. Quintana Petroleum Corp., 699
S.W.2d 864, 874 (Tex. App.--Houston [1st Dist.] 1985, writ ref'd n.r.e.); see also Hamilton v.
McLean, No. 03-99-00320-CV, 2000 WL 502828, at *3 (Tex. App.--Austin Apr. 27, 2000, no pet.)
(not designated for publication). Assuming that Grinnell properly established that Tri-County's
trustee could not or would not seek declaratory relief, Grinnell would only have standing if Tri-County had standing to bring a lawsuit challenging the leases. 

 Four of the leases in this case were executed prior to the formation of Tri-County; therefore,
Tri-County could not have been a third-party beneficiary of those leases. See MCI
Telecommunications Corp., 995 S.W.2d at 651 (noting contracting parties must contract directly for
third parties' benefit); Lenape, 870 S.W.2d at 295 (noting third party did not acquire rights until after
leases were executed). Accordingly, Tri-County and, in turn, Grinnell would not have standing to
challenge these four leases.

 The fifth lease, however, which is referred to as the "F" lease expressly mentions Tri-County
as a party on whose behalf Nueces Minerals was contracting. Tri-County could be considered a
creditor beneficiary of this lease because Nueces Minerals owed Tri-County a legal obligation to pay
it royalties based on the performance of the lease. Assuming that Tri-County's trustee could not or
would not bring a challenge as to the "F" lease, we cannot say that Grinnell lacks standing as to the
"F" lease as a matter of law.

 B. Production in Paying Quantities/Capable of Producing in Paying Quantities

 Assuming Grinnell has standing to challenge the "F" lease, we still find he did not meet his
summary judgment burden of showing as a matter of law that the "F" lease terminated because it
was not capable of producing in paying quantities. Moreover, we find that Grinnell also would not
have met his summary judgment burden to show that the other four leases had terminated even if he
had standing to challenge them. 

 A mineral lease's habendum clause defines the duration of the lease. See Anadarko
Petroleum Corp. v. Thompson, 94 S.W.3d 550, 554 (Tex. 2002). "[A] typical habendum clause
states that a lease lasts for a relatively short fixed term of years (primary term) and then 'so long
thereafter as oil, gas or other mineral is produced' (secondary term)." Id. "In Texas, such a
habendum clause requires actual production in paying quantities." Id. "Thus, a typical Texas lease
that lasts 'as long as oil or gas is produced' automatically terminates if actual production
permanently ceases during the secondary term." Id. 

 Although the typical lease contains a "production in paying quantities" habendum clause, the
Texas Supreme Court has recognized a distinction between the typical clause and one that provides
that the lease continues as long as gas "is or can be produced." Id. at 555. The Texas Supreme Court
has held that such a habendum clause shows the parties' intent that a well actually producing gas or
a well capable of producing gas sustains the lease. Id. 

 In this case, the "A," "B," "D," and "E" Leases all contain the typical habendum clause, and
the lease term is extended so long as these leases are producing in paying quantities. The "F" Lease,
however, is different because it provides, "At the expiration of the primary term hereunder, this
Lease shall terminate as to all acreage upon which there is no well on land covered hereunder
capable of producing oil and/or gas in paying quantities." (emphasis added). Accordingly, the "F"
Lease term is extended so long as the wells thereon are "capable of producing in paying quantities."

 1. "A," "B," "D," and "E" Leases - Producing in Paying Quantities

 A lessor seeking to establish that a lease terminated because of a "cessation of production in
paying" quantities must meet a two-prong test: (1) that the lease failed to yield a profit over a
reasonable period of time and (2) that a reasonably prudent operator would not have continued to
operate the well in the manner in which it was being operated for the purpose of making a profit and
not merely for speculation. Cannon v. Sun-Key Oil Co., 117 S.W.3d 416, 421-22 (Tex.
App.--Eastland 2003, pet. filed); Duncan Land & Exploration, Inc. v. Littlepage, 984 S.W.2d 318,
331 (Tex. App.-- Fort Worth 1998, pet. denied). Whether an oil or gas well is producing in paying
quantities is ordinarily a question of fact, but where it is shown that a small profit has been realized
from the operation of the well, it may be found as a matter of law that the well is producing in paying
quantities. Littlepage, 984 S.W.2d at 331.

 Grinnell's motion contends that the leases terminated because they were not producing in
paying quantities. Grinnell supported this contention with an affidavit of an expert, Charles Graham,
III, who reviewed certain production data and concluded that the leases were not producing in paying
quantities. In reaching this conclusion, Graham states that he relied upon monthly production and
lifting costs for crude oil wells in La Salle County producing from similar depths. Based on these
"expense estimates," Graham concludes that the revenues did not exceed the expenses for the oil
wells on the "B" and "E" leases or for the gas wells on the "E" lease. Similarly, based on these
"expense estimates," Graham concludes that revenues did not exceed the expenses for the "A" and
"D" Leases. Graham asserts that a reasonable prudent operator, having knowledge of present and
projected crude oil prices and present and projected future production on the "B," "E," "A," and "D"
Leases could not reasonably expect to receive profits and would only hold the leases for speculative
purposes. 

 Nueces Minerals and Munson responded to Grinnell's motion with the affidavit of James
Gould, a partner in GGG who had worked for GGG for 22 years, and the deposition testimony of
Munson, the president of Nueces Minerals. Gould had lived on the Ranch operating the wells
located thereon since 1979. In his affidavit, Gould challenges the "expense estimates" used by
Graham in reaching his conclusions. Gould explains that GGG engages in a stripper operation,
which differs from other types of operators. Gould explains that because GGG performs most of its
work internally, GGG operates at a much lower operational expense level than any other company
with a similar type operation. In addition, Gould challenges Graham's reliance on 1999 oil prices,
noting if 2000 prices or an average of the prior 3 years' prices had been used, the revenue amounts
would have been greater. In his deposition, Gould stated that the price of oil had increased from
$8.00 to $26.00 a barrel in two years. Furthermore, Gould states that he provided Grinnell's attorney
with copies of three reservoir engineering reports by three different reservoir engineers estimating
that approximately 5 million barrels of oil remain in place, which is one reason Gould states that he
disagrees that a reasonably prudent operator having knowledge of present and projected crude oil
prices and present and projected future production on the "B," "E," "A," and "D" Leases could not
reasonably expect to receive profits. 

 In addition to Gould's affidavit, Munson testified in his deposition that the costs of operation
are very low because "there's no hired outside people." Munson also testified that Tri-County,
which only received one-eighth of the revenues, was receiving $20,000 to $50,000 each year. Since
GGG as operator was receiving seven-eighths of the revenues, seven times the amount of Tri-County, Munson asserted, "the seven-eighths that's going to the operator is a whale-of-a-lot more
than his cost, the way he's operating." Based on this, Munson responded that the leases were
producing in paying quantities "since their inception or in accordance with the Unitization
Agreement."

 We hold that the testimony of Gould and Munson was sufficient to raise a genuine issue of
material fact with regard to whether the "A," "B," "D," and "E" Leases were producing in paying
quantities.

 2. "F" Lease - Capable of Production in Paying Quantities

 "[T]he phrase 'capable of production in paying quantities' means a well that will produce in
paying quantities if the well is turned 'on,' and it begins flowing, without additional equipment or
repair." Anadarko Petroleum Corp., 94 S.W.3d at 558. In other words, "a well is capable of
production if it is capable of producing in paying quantities without additional equipment or repairs."
Id. 

 In support of his contention that the "F" Lease had terminated, Grinnell relies on his expert's
conclusion that the lease terminated based on the complete cessation of production from October
1998 through May 2000. In addition, Grinnell relies on Gould's deposition testimony in which he
acknowledges that the wells on the "F" Lease had not continuously produced. Although this
testimony would likely support a summary judgment if the "F" Lease contained the typical
habendum clause, it does not support a summary judgment in this case in view of the habendum
clause contained in the "F" Lease. In a typical lease, the cessation of production would terminate
the lease because the lease was not producing in paying quantities. See Cannon v. Sun-Key Oil Co.,
Inc., 117 S.W.3d at 421-22. However, the term of the "F" Lease was extended so long as the wells
located thereon were capable of producing in paying quantities, and Grinnell presented no evidence
to support a finding that the wells on the "F" Lease during the time production ceased were not
capable of producing in paying quantities without additional equipment or repairs if the wells were
turned on. See Anadarko Petroleum Corp., 94 S.W.3d at 558 (defining "capable of production in
paying quantities). Therefore, Grinnell failed to present summary judgment evidence that the wells
located on the "F" Lease had terminated because they were not capable of production in paying
quantities.

 Accordingly, the trial court properly denied Grinnell's motion. (2)

Nueces Minerals and Munson


 The no-evidence motion filed by Nueces Minerals and Munson challenged three claims
Grinnell was asserting against them in his petition, namely, breach of fiduciary duty, accounting, and
declaratory judgment. In response, Grinnell filed a motion for continuance, stating that an adequate
time for discovery had not passed. Grinnell also filed special exceptions, asserting that the motion
failed to specify which element of his claims Nueces Minerals and Munson were challenging.
Finally, Grinnell filed a response to the motion.


A. Adequate Time for Discovery

 We review the trial court's determination that an adequate time for discovery has passed
under an abuse of discretion standard. See Moorehouse v. Chase Manhatten Bank, 76 S.w.3d 608,
612 (Tex. App.--San Antonio 2002, no pet.). In determining whether adequate time for discovery
has passed, we examine: (1) the nature of the case; (2) the nature of evidence necessary to controvert
the no-evidence motion; (3) the length of time the case was active; (4) the amount of time the
no-evidence motion had been on file; (5) whether the movant had requested stricter deadlines for
discovery; (6) the amount of discovery already conducted; and (7) whether the discovery deadlines
in place were specific or vague. Martinez v. City of San Antonio, 40 S.W.3d 587, 591 (Tex.
App.--San Antonio 2001, pet. denied). Although Grinnell did not amend his pleadings to assert
claims against Nueces Minerals and Munson until six months before the no-evidence motion was
filed, the case has been on file for over two years. The no-evidence motion was on file for two
months before the hearing. The motion challenged the claims based on whether a duty was owed
based on the relationship of the parties. Munson's deposition was taken two months before the no-evidence motion for summary judgment was filed. Finally, the only discovery that Grinnell asserted
that he needed to have completed was the disclosure of the ownership of Nueces Minerals; however,
Grinnell never alleges in his pleadings that he potentially is a shareholder. (3) Accordingly, having
considered the relevant factors, we conclude that the trial court did not abuse its discretion in
denying the continuance.


B. Specificity of Motion

 A no-evidence motion for summary judgment "must state the elements as to which there is
no evidence." Tex. R. Civ. P. 166a(I). If a no-evidence motion for summary judgment is not
specific in challenging a particular element or is conclusory, the motion is legally insufficient as a
matter of law and may be challenged for the first time on appeal. Callaghan Ranch, Ltd. v. Killam,
53 S.W.3d 1, 3 (Tex. App.--San Antonio 2000, pet. denied). Rule 166a(I) and its comment
expressly prohibit conclusory motions and general no evidence challenges. Id.

 In order to recover on his breach of fiduciary duty claim, one of the elements Grinnell must
establish is that Nueces Minerals and Munson were his fiduciaries. Myer v. Cuevas, 119 S.W.3d
830, 836 (Tex. App.--San Antonio 2003, no pet.). Accordingly, the motion, which states that there
is no evidence that Nueces Minerals or Munson owe a fiduciary duty to Grinnell, specifically
challenges this element. In addition, the motion specifically challenges whether Nueces Minerals
or Munson breached any fiduciary duty if one was owed. In order to recover on his claim for an
accounting, Grinnell was required to establish that he was a beneficiary or interested person as to
Nueces Minerals and Munson as contemplated by section 113.151 of the Texas Property Code. See
Tex. Prop. Code Ann. § 113.151 (Vernon Supp. 2004) (permitting beneficiary or interested person
to file suit to compel trustee to account). The motion specifically challenges whether Grinnell was
a beneficiary or interested person as to Nueces Minerals and Munson. Finally, the motion contends
that there is no evidence of a justiciable controversy that would properly trigger relief under the
declaratory judgment act. In order to be entitled to declaratory relief, Grinnell was required to
establish a justiciable controversy within the court's jurisdiction by showing that a cause of action
was pending between the parties or that "such a clear indication of the extent of the parties'
differences [existed] that the court could presume that one is imminent." Taylor v. State Farm
Lloyds, Inc., 124 S.W.3d 665, 669 (Tex. App.--Austin 2003, no pet.). Accordingly, by challenging
Grinnell's ability to establish a justiciable controversy, the motion specifically challenges an element
of his claim for declaratory relief.

C. Breach of Fiduciary Duty

 Grinnell responded that he was entitled to assert the breach of fiduciary duty claim against
Nueces Minerals as a beneficiary of Tri-County based on the fiduciary duty Nueces Mineral owed
to Tri-County. Grinnell further responded that Munson could be held liable based on his breach of
his fiduciary duty as a corporate officer of Nueces Minerals.

 1. Munson

 A fiduciary relationship is an extraordinary one that the law does not recognize lightly. Myer,
119 S.W.3d at 836. Corporate officers owe fiduciary duties to the corporations they serve; however,
corporate officers do not owe fiduciary duties to individual shareholders unless a contract or special
relationship exists between them in addition to the corporate relationship. Id. Furthermore, the right
to proceed against an officer or former officer of a corporation for breaching a fiduciary duty owed
to the corporation belongs to the corporation itself. Id.

 In this case, Grinnell has presented no evidence that Munson, as president of Nueces
Minerals, owed any fiduciary duty to Grinnell. Grinnell has no standing to challenge whether
Munson breached his fiduciary duty to Nueces Minerals because that cause of action belongs to
Nueces Minerals. Id. Accordingly, the trial court properly granted summary judgment in favor of
Munson with regard to Grinnell's breach of fiduciary duty claim.


 2. Nueces Minerals

 Because Nueces Minerals held 100% of the executive mineral interests, it owed a fiduciary
duty to Tri-County as a 90% non-executive interest owner. See Manges v. Guerra, 673 S.W.2d 180,
183 (Tex. 1984); Harrison v. Bass Enterprises Production Co., 888 S.W.2d 532, 539 (Tex.
App.--Corpus Christi 1994, no pet.). As a beneficiary of Tri-County, Grinnell is authorized to
enforce an action when the trustee (Bank One) cannot or will not enforce it. Interfirst Bank-Houston,
N.A. v. Quintana Petroleum Corp., 699 S.W.2d at 874. We will assume, for purposes of this
opinion, that Grinnell properly established that Tri-County's trustee could not or would not enforce
the claim against Nueces Minerals.

 The fiduciary duty owed by the holder of the executive right is to acquire for the
non-executive every benefit that he exacts for himself. Manges, 673 S.W.2d at 183-84. Grinnell
presented no evidence that Nueces Minerals exacted some benefit for itself that was different than
the benefits acquired for Tri-County. 

 Although an executive interest owner may be held liable to the non-executive mineral interest
owner if he accepts a lease containing inferior terms, Hlavinka v. Hancock, 116 S.W.3d 412, 419
(Tex. App.--Corpus Christi 2003, pet. denied), Grinnell presented no evidence that the terms of the
leases were inferior when the leases were executed. Grinnell's statement in his affidavit that he
offered to lease the minerals and proposed to "meet or better any terms" Nueces Minerals might
receive is no evidence that the existing leases contained inferior terms, particularly given that
Grinnell's statement is equivocal on whether Grinnell's terms would be better than the existing
terms. 

 The cases finding a breach by the executive interest owner all deal with disproportionate
benefits or inappropriate consideration inuring to the executive under the terms of a lease or as a
result of its execution. Hlavinka v. Hancock, 116 S.W.3d at 419. An element of unjust enrichment
or self-dealing is common to the cases. Id. at 419-20; see also In re Bass, 113 S.W.3d 735, 745
(Tex. 2003) (distinguishing Manges because self-dealing was absent). Grinnell has presented no
evidence that Nueces Mineral is engaged in self-dealing or has otherwise been unjustly enriched in
its capacity as executive mineral interest owner. Accordingly, the trial court properly granted
summary judgment with regard to Grinnell's claim against Nueces Minerals for breach of fiduciary
duty.

D. Accounting

 In his petition, Grinnell alleged that pursuant to sections 113.151 and 113.152 of the Texas
Property Code, Nueces Minerals and Munson were required to account to Grinnell upon receipt of
a written demand. Nueces Minerals and Munson moved for summary judgment on the basis that no
evidence existed to show that Grinnell was a "beneficiary" or "interested person" as to Nueces
Minerals and Munson as those terms are used in the Code. 

 By alleging that Nueces County and Munson were required to account to Grinnell "upon
receipt of a written demand," Grinnell was necessarily alleging that he was entitled to the accounting
as a beneficiary under section 113.151(a) since this is the only section that makes reference to a
required accounting upon a written demand. See Tex. Prop. Code Ann. § 113.151 (Vernon Supp.
2004). A beneficiary is defined as "a person for whose benefit property is held in trust." Id. at
§ 111.004(2). Grinnell presented no evidence to establish that he is a beneficiary of Nueces
Minerals, which is a Texas corporation, or Munson. Accordingly, the trial court did not err in
granting summary judgment with regard to Grinnell's claim against Nueces Minerals and Munson
for an accounting.

E. Declaratory Relief

 In order to be entitled to declaratory relief, Grinnell was required to establish a justiciable
controversy within the court's jurisdiction by showing that a cause of action was pending between
the parties or that "such a clear indication of the extent of the parties' differences [existed] that the
court could presume that one is imminent." Taylor v. State Farm Lloyds, Inc., 124 S.W.3d at 669.
Because summary judgment was properly granted on the two causes of action that were pending
between the parties and since Grinnell presented no evidence that any other cause of action was
imminent, summary judgment was properly granted with regard to Grinnell's claim against Nueces
Minerals and Munson for declaratory relief.

Tri-County


 In a section of his pleading entitled "Breach of Fiduciary Duty," Grinnell alleged that Tri-County breached its fiduciary duty to him "by not preparing a full and accurate accounting upon
written demand as required by Texas law and by failing to make distributions." In a separate section
of his pleading entitled "Accounting," Grinnell alleged that Tri-County failed to provide the
accounting required by Sections 113.151 and 113.152 of the Code. Tri-County moved for summary
judgment on the basis that it had provided a full accounting to Grinnell and made all distributions
owed to him.

 In his brief, Grinnell contends that Tri-County's motion did not request a summary judgment
regarding his breach of fiduciary duty claims or his request for a declaratory judgment. We disagree.
Tri-County's motion challenges each factual allegation on which all of Grinnell's claims against Tri-County were based, asserting "As the issues of the accounting and distributions are the only factual
allegations underlying the causes of action asserted by Grinnell against Tri-County, Tri-County is
entitled to summary judgment." By challenging the factual allegations underlying each of the causes
of action asserted by Grinnel, Tri-County has properly moved for summary judgment on each of the
alleged claims. Accordingly, Tri-County was properly entitled to summary judgment if it
conclusively established that it had made all distributions owed to Grinnell and provided Grinnell
with a full accounting.

 With regard to the distributions, Tri-County presented an affidavit that stated, "The records
of Tri-County Royalty reflect that it has tendered to Steven C. Grinnell all sums owed to him by
virtue of his ownership of a share of Tri-County. Such distributions were of the following amounts
of the following dates: Aug. 24, 2001 $120.28; Feb. 4, 2002 $150.35; April 29, 2002 $40.10." The
summary judgment evidence showed that Grinnell's interest in Tri-County was not documented until
the spring of 2001, and there was no evidence controverting that he received all sums owed to him
after the date his interest in Tri-County was delivered to him. Accordingly, summary judgment was
properly granted in favor of Tri-County in relation to Grinnell's allegation that Tri-County had not
made all distributions owed to Grinnell.

 With regard to the accounting, Tri-County submitted evidence that it provided Grinnell with
an accounting on August 27, 2001. However, in response to Tri-County's summary judgment
motion, Grinnell submitted his affidavit stating that Tri-County had not accounted for all of its
operations, assets, and income. In addition, Grinnell submitted two letters written by his attorney
after he received the accounting from Tri-County. The first letter, dated January 28, 2002, stated that
Grinnell was interested in obtaining financial information. Specifically, the letter requested
information, including supporting documents, that establish the net assets of Tri-County. The letter
further requested information regarding the income and distributions of Tri-County since May of
1999, and the total number of shares/beneficial interest units authorized, issued, and outstanding.
Finally, the letter requested the names, addresses, and telephone numbers of the beneficial interest
unit holders. The letter states, "Obviously, audited or un-audited statements of financial
position/balance sheets, appraisals, inventories, income statements, bank statements, tax returns,
minutes, resolutions, etc. would be very useful." The second letter, dated May 10, 2002, stated that
Grinnell was renewing his request for an accounting and for information regarding the ownership
of Tri-County. The letter states, "the accounting previously requested from [Tri-County] would be
very useful in evaluating Mr. Grinnell's claims." The letter then cites section 113.151. Neither letter
referenced the accounting previously delivered by Tri-County or specified any alleged deficiency in
that accounting.

 Section 113.152 of the Property Code sets for the required contents of an accounting. Tex.
Prop. Code Ann. § 113.152 (Vernon 1995). The written statement of accounts must show:

 (1) all trust property that has come to the trustee's knowledge or into the trustee's
possession and that has not been previously listed or inventoried as property
of the trust;


 (2) a complete account of receipts, disbursements, and other transactions
regarding the trust period for the period covered by the account, including the
source and nature, with receipts of principal and income shown separately;


 (3) a listing of all property being administered, with an adequate description of
each asset;


 (4) the cash balance on hand and the name and location of the depository where
the balance is kept;


 (5) all known liabilities owed by the trust.


Id.

 With regard to a listing of the trust property, the accounting submitted by Tri-County listed
mineral assets and cash. Based on the Declaration of Trust, the "mineral assets" necessarily referred
to Tri-County's 90% nonparticipating royalty interest. (4) In addition, the accounting itemized the
receipts and disbursements and set forth the cash balance on hand. Finally, the accounting lists Bank
One as the trustee, and the accounting reveals that Bank One is the depository where the cash balance
is kept. (5)

 Grinnell's statement in his affidavit that Tri-County has not accounted for all of its
operations, assets, and income is too conclusory to controvert the accounting. Grinnell fails to
provide any facts to support this conclusion by specifically challenging any of the information listed
in the accounting. Furthermore, the letters from Grinnell's attorney appear to be requesting financial
information and ownership information as discovery in the underlying litigation. Even if the requests
were in furtherance of an accounting, section 113.152 only requires a trustee to produce the lists and
documents enumerated in the section. Although a trial court would have the discretion to order the
production of the underlying financial information or to require an audited or verified accounting
under certain circumstances, see Beaty v. Bales, 677 S.W.2d 750, 754 (Tex. App.--San Antonio
1984, writ ref'd n.r.e.), no evidence was presented to show the need for a further accounting in this
case. Accordingly, the trial court did not err in finding that Tri-County had conclusively established
that it had provided Grinnell with the accounting required by section 113.152 of the Property Code.

Conclusion


 The trial court's orders are affirmed.

 Phylis J. Speedlin, Justice





1. Grinnell's only response to the assertion that he lacked standing was that the absence of standing must be
affirmatively pled in a verified pleading or it is waived. Grinnell's contention is misplaced. Standing is a component
of subject matter jurisdiction. West Orange-Cove Consol. I.S.D. v. Alanis, 107 S.W.3d 558, 583 (Tex. 2003). Standing
cannot be waived and may be raised at any time, even for the first time on appeal. Id.
2. Grinnell's brief makes reference to an alternative issue regarding the unauthorized location of GGG's airstrip
and trespass, claiming there has been no opposition to that portion of his motion. Although Grinnell's motion makes a
reference to the airstrip, the relief requested in the motion is a judgment that the leases were terminated. Grinnell's
motion did not request summary judgment on the alternative ground that the airstrip was in an unauthorized location.
3. In its brief, Nueces Minerals states that all of its shareholders are Munson family members. The brief further
states, "Nueces Minerals was fully within its rights in not handing over its list of shareholders to Grinnell so that Grinnell
could engage in whatever sort of chicanery he had in mind in communicating with those shareholders."
4. The Declaration of Trust expressly gives Tri-County the power to collect all moneys accruing to the
Nonparticipating Royalty, which is defined as the 90% nonexecutive royalty interest being deeded to Tri-County. The
Declaration of Trust states, "The Trustee shall have no powers other than those provided herein; and, without limiting
the generality of the foregoing, it is understood and agreed that Trustee has no power to invest or reinvest any proceeds
constituting a part of the trust at any time and shall have no power to sell, lease or encumber the Nonparticipating
Royalty. The Trustee may retain the proceeds accruing between distribution in a bank account to be established with
Trustee itself upon which no interest shall be paid."
5. Based on the Declaration of Trust, Bank One was required to be the depository since it could only retain the
proceeds accruing between distribution in a bank account "to be established with Trustee itself."