IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00124-CR

 

Martin Saucedo Castor,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 



From the 54th District Court

McLennan County, Texas

Trial Court No. 2000-759-C

 



BRIEFING ORDER










 

          Acting as his own attorney, Martin
Saucedo Castor filed a notice of appeal.  The notice of appeal invoked our
jurisdiction, at least to the extent of determining whether or not we have
jurisdiction of the merits of the underlying issues that Castor sought to
appeal.  Still acting as his own attorney, Castor has now filed a “Motion to
Dismiss Appeal.”  In the motion, Castor indicates that the notice of appeal was
filed in error and that the issue he is seeking to appeal is “jail time credit
‘Nunc Pro Tunc’ appeal. . . .”

          The motion to dismiss does not contain
proof of service as required by Texas Rule of Appellate Procedure 9.5.  A copy
of all documents presented to the Court must be served on all parties to the
appeal and must contain proof of service.  Tex.
R. App. P. 9.5(a), (d).

          Normally in this situation, we would
notify the appellant that he has fourteen days from the date of notice to
provide a proper proof of service to the Court or the relief requested in the
related document would be dismissed or the document stricken.

          In this situation, however, we are
hereby providing a copy of the motion to dismiss on the State and requesting a
response to Castor’s motion to dismiss within twenty-eight days.

          We ask the State to brief in response
whether or not we should first inquire as to whether or not Castor is entitled
to be represented by counsel for the issue presented to the trial court and on
appeal of that issue, and if Castor is entitled to representation on appeal,
whether or not we should abate the case to the trial court for a determination
of whether or not Castor should be allowed to represent himself on appeal. The
State’s brief is due twenty-eight days after the date of this Order.

 

                                                          PER
CURIAM

 

Before
Chief Justice Gray

          Justice
Vance, and

          Justice
Reyna

Briefing
ordered

Order
issued and filed July 19, 2006

Do
not publish






/p>

 

            4.         Dr. Mercer has
advised Finnegan . . . , and confirms, that retaining him as a technical expert
and consultant for the Civil Action will not create any conflict or potential
conflicts with any responsibilities that he has as a result of his present or
former employment or as a result of his other consulting work.  Moreover, Dr.
Mercer agrees that although he will function as a non-exclusive consultant to
Finnegan . . . , he will not establish any new consulting or employment
relationships in conflict with his obligations under this Agreement.  In the
event Dr. Mercer proposes to establish any additional consulting or employment
relationships that may result in a conflict or potential conflict, during the
period this Agreement is in effect, Dr. Mercer agrees that he will notify
Finnegan . . . of the name and address of the other organization and will
disclose to Finnegan . . . the nature of the other consulting arrangement to
the extent it is permitted by the other organization.  At that time, the
parties will determine whether an actual or potential conflict exists and the
best manner of avoiding such a conflict, including possible termination of this
Agreement.

 

            5.         This Agreement
shall be for a term commencing on the date of execution by Dr. Mercer and will
extend until terminated by either party to this Agreement.  Finnegan . . . or
Dr. Mercer may terminate this Agreement at any time by providing the other
party with written notice of such termination.  However, the obligations
assumed by Dr. Mercer pursuant to Paragraphs 3 and 4 shall survive termination
of this Agreement for a period of three years.

 

            Darren Jiron, a patent
attorney with Finnegan, testified that, after Mercer had signed the Retainer
Agreement, Jiron sent Mercer the five patents that were at issue in the Sony
litigation for him to review.  The patents are public documents.  Finnegan
attorneys also communicated with Mercer about setting up a face-to-face meeting
to discuss the issues in the case.  Those communications led to a
videoconference between three Finnegan attorneys, including Jiron, and Mercer. 
Jiron stated that the first thirty minutes of the videoconference were spent
getting to know Mercer and learning about his background and experience.  They
also discussed the technology involved in the case, including an overview of
the five patents that Mercer had been asked to review, and spent some time
talking about the allegations in the case and the general case strategies that
the Finnegan attorneys had developed.[1] 
The videoconference lasted approximately four and one-half hours.

            Jiron testified that he did
not recall conversing with Mercer after the videoconference until July 3, 2007,
approximately four and one-half months later, when he e-mailed Mercer that the Sony
litigation was subject to a stay pending potential settlement.  Sony later
signed a license agreement that settled the litigation.  Mercer did not submit
a bill for payment for his services.

            On October 1, 2008, Mercer
contacted Jiron by both voicemail and e-mail to inform him that he had been
approached by O2 Micro with a consulting opportunity in unrelated litigation
and that he wanted confirmation for his files that he was not bound by the
Retainer Agreement since it was his understanding that the Sony case had
settled long ago and he had neither requested nor received payment for his
services in that case.  On October 7, 2008, Jiron sent Mercer a reply e-mail,
stating that the Sony case had settled but that the Retainer Agreement “remains
binding.”  Jiron also stated in his reply e-mail that Finnegan was checking
with Sony regarding Mercer’s request to work with O2 Micro on a project
unrelated to the dispute between O2 Micro and Sony; however, Finnegan did not
contact Sony.  Instead, Finnegan determined that the issue involved its own
work product, and it thus did not need to contact Sony.

            Jiron testified that in
February 2009, Finnegan began representing Monolithic Power Systems, Inc. (MPS)
and ASUSTek (ASUS) in another suit filed by O2 Micro.  On April 23, 2009, pursuant
to the ground rules in the International Trade Commission (ITC) investigation,
O2 Micro identified to all the parties in the case its intent to share
confidential information with two individuals, one of them being Mercer.  Jiron
testified that Finnegan was shocked and, pursuant to the ground rules, raised
an objection to the other side.  Jiron explained that there is a ten-day period
after an objection is raised in which the parties are to confer and see if they
can resolve the dispute.  Jiron testified that Finnegan had several
communications with opposing counsel, but the dispute was not resolved.

            Finnegan then filed a motion
to intervene in the ITC investigation for the limited purpose of attempting to
enforce the provisions of the Retainer Agreement and to disqualify Mercer as an
expert in the case.  The administrative law judge denied Finnegan’s motion to
intervene, and Mercer was not disqualified as an expert.  Jiron testified that Mercer’s
breach of the Retainer Agreement was causing Finnegan to suffer irreparable
harm.

            After Jiron testified at the
temporary injunction hearing, the trial court asked Finnegan’s counsel to
explain why he believed Finnegan had standing.  The court then signed an order
stating that, after determining Finnegan lacked standing and had an adequate
remedy at law, Finnegan’s request for a temporary injunction was denied.

Discussion

            A temporary injunction’s
purpose is to preserve the status quo of the litigation’s subject matter
pending a trial on the merits.  Butnaru v. Ford Motor Co., 84 S.W.3d
198, 204 (Tex. 2002).  A temporary injunction is an extraordinary remedy and
does not issue as a matter of right.  Id.  To obtain a temporary
injunction, the applicant must plead and prove three specific elements:  (1) a
cause of action against the defendant; (2) a probable right to the relief
sought; and (3) a probable, imminent, and irreparable injury in the interim.  Id.  A probable right to the relief sought is shown by alleging a cause of
action and presenting evidence that tends to sustain it.  Vaughn v. Intrepid
Directional Drilling Specialists, Ltd., 288 S.W.3d 931, 936 (Tex. App.—Eastland 2009, no pet.); Tanguy v. Laux, 259 S.W.3d 851, 857 (Tex. App.—Houston [1st Dist.] 2008, no pet.).  An injury is irreparable if the injured
party cannot be adequately compensated in damages or if the damages cannot be
measured by any certain pecuniary standard.  Butnaru, 84 S.W.3d at 204.

            In its first issue, Finnegan
argues that the trial court erred in denying its request for a temporary
injunction based on lack of standing.

            Standing is a component of
subject-matter jurisdiction and is a constitutional prerequisite to maintaining
a lawsuit.  See Tex. Ass’n of Bus. v. Tex. Air Control Bd., 852 S.W.2d
440, 443-44 (Tex. 1993).  The standing doctrine requires that there be a real
controversy between the parties that will be actually determined by the
judicial declaration sought.  Austin Nursing Ctr., Inc. v. Lovato, 171
S.W.3d 845, 849 (Tex. 2005); Brown v. Todd, 53 S.W.3d 297, 305 (Tex. 2001).  A plaintiff has standing when it is personally aggrieved, regardless of
whether it is acting with legal authority.  Nootsie, Ltd. v. Williamson
County Appraisal Dist., 925 S.W.2d 659, 661 (Tex. 1996).  Because standing
is a component of subject-matter jurisdiction, we consider Finnegan’s standing
as we would a plea to the jurisdiction.  See Brown, 53 S.W.3d at 305
n.3; Dass, Inc. v. Smith, 206 S.W.3d 197, 201 (Tex. App.—Dallas 2006, no
pet.).

Generally, a trial court looks to the
allegations of a plaintiff’s petition to determine standing.  See Tex. Dep’t of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004).  However,
under certain circumstances, when deciding a jurisdictional challenge, a trial
court may go beyond the allegations in the pleadings and consider evidence.  See
id. at 227 (citing Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547,
555 (Tex. 2000)); Sarah v. Primarily Primates, Inc., 255 S.W.3d 132,
142-43 (Tex. App.—San Antonio 2008, pet. denied) (in determining jurisdictional
issue, court considered contract entered into evidence at hearing on motion to
dismiss).  Here, Finnegan’s petition incorporated the Retainer Agreement by
reference.  Finnegan’s trial counsel also entered the Retainer Agreement into
evidence at the temporary injunction hearing.  Thus, the Retainer Agreement is
evidence that the trial court considered in deciding Finnegan’s request for
injunctive relief, and, because it is necessary to resolve the jurisdictional
issue, we will consider it on appeal.  See Miranda, 133 S.W.3d at 227.

Finnegan argues that it, in addition to
Sony, has standing to sue on the Retainer Agreement because it has its own
rights and interests in the contract.  Conversely, Mercer argues that Finnegan
has no independent interest in the Retainer Agreement outside of the interest
owned by Sony.  We agree with Mercer.

Finnegan is not a party to the Retainer
Agreement.  See Am. Heritage, Inc. v. Nev. Gold & Casino, Inc., 259
S.W.3d 816, 820 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (“A party to a
contract has standing to maintain a suit on the contract.”) (citing Interstate
Contracting Corp. v. City of Dallas, 135 S.W.3d 605, 618 (Tex. 2004)).  The
first paragraph of the Retainer Agreement expressly states:  “This Agreement is
entered into by and between Finnegan, Henderson, Farabow, Garrett & Dunner,
L.L.P. (“Finnegan, Henderson”), on behalf of Sony Corporation, Sony EMCS
Corporation, and Sony Electronics Inc., (collectively “Sony”) and Dr. Melvin
Ray Mercer (“Dr. Mercer”) . . . .”  (Emphasis added.)  Likewise, Finnegan signed
the Retainer Agreement as “Attorneys for Sony Corporation, Sony EMCS
Corporation, and Sony Electronics Inc.,” rather than in its principal capacity.

Generally someone who is not a party to
an agreement has no interest in the terms of that contract.  Wells v. Dotson,
261 S.W.3d 275, 284 (Tex. App.—Tyler 2008, no pet.) (citing Grinnell v.
Munson, 137 S.W.3d 706, 712 (Tex. App.—San Antonio 2004, no pet.)); El Paso Cmty. Partners v. B & G/Sunrise Joint Venture, 24 S.W.3d 620, 626 (Tex. App.—Austin 2000, no pet.).  However, a person who is not in privity to the written
agreement may show that he is eligible to bring an action on the contract as a
third-party beneficiary.  Wells, 261 S.W.3d at 284.

There is a presumption against
conferring third-party-beneficiary status on noncontracting parties.  S.
Tex. Water Auth. v. Lomas, 223 S.W.3d 304, 306 (Tex. 2007).  In deciding
whether a third party may enforce or challenge a contract between others, it is
the contracting parties’ intent that controls.  Id.  The intent
to confer a direct benefit upon a third party “must be clearly and fully
spelled out or enforcement by the third party must be denied.”  Id. (quoting MCI Telecommc’ns Corp. v. Tex. Utils. Elec. Co., 995
S.W.2d 647, 651 (Tex. 1999)).  Incidental benefits that may flow from a
contract to a third party do not confer the right to enforce the contract.  Id.  A third party may only enforce a contract when the contracting parties
themselves intend to secure some benefit for the third party and entered into
the contract directly for the third party’s benefit.  Id.  To
qualify as one for whose benefit a contract was made, the third party must
benefit more than incidentally; he must be either a donee or creditor
beneficiary.  Id.  A person is a donee beneficiary if the
performance promised will come to him as a pure donation.  Id.  If
performance will come to satisfy a duty or legally enforceable commitment owed
by the promisee, then the third party is considered a creditor beneficiary.  Id.

Finnegan contends that, by entering into
the Retainer Agreement, the parties to the contract intended to protect
Finnegan’s own personal interest in its confidences and work product.  However,
the Retainer Agreement expressly provides, “Dr. Mercer acknowledges that any
information received under this Agreement remains the property of Sony.” 
(Emphasis added.)  The language of the contract thus reveals that the parties’
intent was to protect the interests of Sony, not Finnegan.  Therefore, we
conclude that Finnegan lacks standing to sue Mercer for breach of contract.

Nor has Finnegan shown that it has
standing to seek declaratory relief regarding the Retainer Agreement.  Section
37.004(a) of the Declaratory Judgment Act provides in pertinent part, “A person
. . . whose rights, status, or other legal relations are affected by a . . .
contract . . . may have determined any question of construction or validity
arising under the . . . contract . . . and obtain a declaration of rights,
status, or other legal relations thereunder.”  Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (Vernon 2008). 
However, as explained above, Finnegan possesses no enforceable contractual
rights under the Retainer Agreement.

Because Finnegan lacks standing to sue
Mercer for breach of contract or for declaratory relief, Finnegan did not
establish that it has a cause of action against Mercer.  See Butnaru, 84
S.W.3d at 204.  As a result, we hold that the trial court properly denied Finnegan’s
request for a temporary injunction because Finnegan lacked standing.  We
overrule Finnegan’s first issue and need not address its second issue.  See
Tex. R. App. P. 47.1.

Conclusion

Having overruled Finnegan’s first issue,
we affirm the trial court’s order denying Finnegan’s request for a temporary
injunction.

 

REX D. DAVIS

Justice

 

Before
Chief Justice Gray,

Justice Reyna, and

Justice Davis

(Chief Justice Gray dissents to the
Court’s affirmation of the trial court’s judgment.  A separate opinion will not
issue.  Chief Justice Gray notes, however, that if the Court is to maintain a
parochial view of the legal profession, the result may be correct.  But because
he believes the Court must recognize the national and international implication
of our decisions, the Court cannot take such a narrow view of this proceeding. 
He believes when the transaction is taken in context, it is Finnegan’s contract
that recognizes the client’s obligation to pay, or at the very least, Finnegan
was an intended third party beneficiary of the contract known to Mercer.  Under
either view, the trial court erred by not granting a temporary injunction.  He
respectfully dissents.)

Affirmed

Opinion
delivered and filed December 30, 2009

[CV06]









[1] Mercer denies that Finnegan provided
him with any of Sony’s confidential information during the videoconference.