

In The

# Court of Appeals
## Seventh District of Texas at Amarillo

No. 07-23-00401-CV

CHRISTOPHER GARCIA, APPELLANT

V.

SEGWAY, INC., BIRD RIDES, INC., ROD KELLER, APPELLEES

On Appeal from the 455th District Court
Travis County, Texas
Trial Court No. D-l-GN-20-001417, Honorable Laurie Eiserloh, Presiding

December 5, 2024

MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

Appellant, Christopher Garcia, appeals from a Travis County trial court's order granting summary judgment in favor of Segway, Inc. and Rod Keller.[1] Garcia sued Segway, Keller, and others,[2] alleging they misappropriated his trade secret plan for a ride-

---

[1] This cause was originally filed in the Third Court of Appeals and was transferred to this Court by a docket-equalization order of the Supreme Court of Texas. See TEX. GOV'T CODE ANN. § 73.001. In the event of any conflict, we apply the transferor court's case law. TEX. R. APP. P. 41.3.

[2] Garcia's other defendants consisted of Bird Rides, Inc., Travis VanderZanden, and Brian Buccella. Garcia nonsuited Buccella, and the trial court granted VanderZanden's special appearance. Bird Rides

sharing business using Segway devices. Finding no error in the trial court's grant of summary judgment, we affirm.

## Background

In 2013, Garcia approached Segway by email with a plan for a ride-sharing business called "SegUrWay." He described the concept as "Car2Go with Segways," explaining that hundreds of Segway[3] devices would be placed within a geofenced area for on-demand transportation rental through the SegUrWay mobile app. The plan proposed generating revenue through membership and usage fees. Unlike bike-sharing systems, users renting a Segway would not be required to return the device to a fixed station.

Garcia further detailed his SegUrWay concept in a PowerPoint presentation, which included the proposal's pricing model, to Keller and Segway. Garcia also posted the PowerPoint on fundable.com, a public website for startup funding. Garcia did not obtain a nondisclosure agreement or other confidentiality measure before forwarding the PowerPoint to the Appellees or posting the information on the fundable.com website.

Over the next several years, Segway representatives offered varying degrees of encouragement to Garcia. In February 2013, Nick Evans, a Segway employee, praised Garcia's business plan as "sound," and suggested that if Garcia had financial backing as represented to him, Garcia might one day appear "on the cover of Forbes." In 2014,

---

obtained summary judgment against Garcia; he does not appeal the summary judgment in favor of that defendant.

[3] "A Segway is a two-wheeled, self-balancing, motorized transportation device upon which an individual must stand in order to ride." *Ault v. Walt Disney World Co.,* 254 F.R.D. 680, 684 (M.D. Fla. 2009).

Evans assured Garcia that "Segway will never wish to compete with you in your arena," and encouraged him to "stick with your idea." In late 2015, Keller expressed enthusiasm for Garcia's "passion," asked to review Garcia's plan, and offered to potentially connect him with investors.

Despite these encouraging communications, no business relationship ever materialized between Segway and Garcia. When Garcia pressed Keller in September 2013, about forming a partnership, writing that the "lack of a partnership between us is the last thing keeping SegUrWay from taking off," Segway's response identified obstacles. For example, Mark Vena, another Segway representative, explained that while Garcia's SegUrWay concept was "interesting," it lacked sufficient business model detail necessary to assess whether Segway could make any money. Vena noted the proposal seemed to "hinge on" a technology partnership with AT&T, for which Segway could not devote funds and resources. Vena wrote in mid-December 2013, that implementing Garcia's vision would require approximately $2 million in personnel and resources and asked whether AT&T might be willing to make such an investment. After Garcia persisted in requesting engineering assistance, Vena responded in February 2014, stating, "Chris, for the last time, we're not providing ANY engineering time on this . . . . We've consumed already too much time working with you on this as you don't appear to understand the word 'no'."

Nevertheless, communications continued into early 2016. Following a December 2015 email in which Keller advised Garcia to demonstrate Segway's potential benefit from the venture, Keller left the company. At Keller's suggestion, Garcia then reached out to Buccella, Segway's vice president of business development. In a February 2016 email to Buccella, Garcia outlined his four-year effort to develop the Segway sharing system

and attached documentation and financial forecasts, hoping to continue the discussions he had begun with Keller. His email went unanswered.

According to Garcia's unsworn declaration, in September 2017, he discovered Bird Rides, Inc. had launched a dockless electric scooter service in Santa Monica, California, using what he characterized as "an identical business model to SegUrWay with a different scooter." Garcia's declaration further stated that the following June, he learned Buccella had joined Bird as Senior Vice President of Global Policy and Consumer Products, and that the Segway representatives with whom he had communicated—including Keller, Buccella, Evans, and Vena—had all subsequently left the company. Although Keller continued communicating with Garcia through late 2018, in their final exchange Keller claimed he had no recollection of SegUrWay, despite their previous email correspondence.

**Analysis**

Garcia raises two *Malooly* issues[4] challenging the trial court's grant of both the no-evidence and traditional summary judgment motions. We review summary judgments de novo pursuant to well-established standards. *See Lightning Oil Co. v. Anadarko E&P Onshore*, LLC, 520 S.W.3d 39, 45 (Tex. 2017). Where, as here, the underlying facts are undisputed, the existence of a confidential or fiduciary relationship is a question of law for the court. *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005).

---

[4] *See Malooly Bros, Inc. v. Napier,* 461 S.W.2d 119, 121 (Tex. 1970) (point of error on appeal stating simply that trial court erred by granting summary judgment "allow[s] argument as to all the possible grounds upon which summary judgment should have been denied.").

To prevail on a claim for misappropriation of trade secrets under Texas law, a plaintiff must prove: (1) the existence of a trade secret; (2) acquisition of the trade secret through a confidential relationship or by improper means; (3) use of the trade secret without authorization; and (4) resulting damages. *Neurodiagnostic Consultants, Ltd. Liab. Co. v. Nallia,* No. 03-18-00609-CV, 2019 Tex. App. LEXIS 8156, at *23–24 (Tex. App.—Austin Sept. 6, 2019, no pet.) (mem. op.) (citing *Trilogy Software, Inc. v. Callidus Software, Inc.,* 143 S.W.3d 452, 463 (Tex. App.—Austin 2004, pet. denied)). *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 134A.001–.008 (Texas Uniform Trade Secrets Act).

For purposes of our analysis, we will assume without deciding that Garcia's SegUrWay concept qualified as a trade secret.[5] The dispositive issue in this appeal is whether Garcia produced evidence that Segway and Keller acquired trade-secret-protected information through a confidential relationship with him or by improper means.

It is without dispute that a formal fiduciary relationship, giving rise to a duty of nondisclosure, did not exist between Appellees and Garcia. In the trial court, Garcia argued that Segway and its representatives, including Keller, induced him to rely on a belief that a confidential relationship existed between the parties given their "lengthy

---

[5] The Texas Uniform Trade Secrets Act defines a "trade secret" as information of any form or type, including business plans, methods, and processes, if:

> (A) the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret; and

> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

TEX. CIV. PRAC. & REM. CODE ANN. § 134A.002(6).

business dealings." On appeal, he contends Segway and Keller obtained his trade secrets improperly by inducing a confidential relationship that imposed a duty of secrecy. In his reply brief, Garcia further argues, "The record evidence below demonstrates Appellees *knew or should have known* a confidential relationship was formed based upon years-long interactions with Garcia concerning his SegUrWay concept and the documents disclosed by Garcia for his stated purpose to form a joint venture or partnership." (emphasis supplied).

Under Texas law, an informal confidential relationship may arise in some circumstances when one party trusts in and relies on another. *See Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176 (Tex. 1997), *overruled in part on other grounds by Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 336 n.7 (Tex. 2011); *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962). Such relationships can develop when parties have dealt with each other "in such a manner for a long period of time that one party is justified in expecting the other to act in its best interest." *Insurance Co. of North America v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998).

However, courts do not create informal confidential relationships lightly. *Grinnell v. Munson*, 137 S.W.3d 706, 718 (Tex. App.—San Antonio 2004, no pet.). That is because one party's subjective trust does not transform an otherwise arm's-length discussion into a fiduciary relationship. *Schlumberger*, 959 S.W.2d at 177. Moreover, the alleged fiduciary or confidential relationship must exist prior to, and apart from, the agreement that forms the basis of the present lawsuit. *See Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 611 (Tex. App.—Waco 2000, pet. denied); *Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 280 (Tex. 1995).

6

We turn to Garcia's evidence. The essence of this body of proof was his unsworn declaration. There, he attempted to establish a confidential relationship through his interpretations of various communications with Segway representatives:

- He "understood" that negotiations were confidential based on Evans's statement that "Segway will never wish to compete with you in your arena";

- He "understood" Segway took negotiations seriously when he learned of Keller's involvement as CEO;

- He "believe[d]" negotiations were confidential after Vena expressed interest but cited funding concerns;

- He "understood" Segway saw value in his proprietary information after he provided his plan to Keller without any confidentiality restrictions;

- He "believe[d]" partnership negotiations were confidential despite Vena's explicit statement that Segway would not enter mutual nondisclosure agreements;

- He "understood" Keller had genuine interest in SegUrWay's success based on Keller's offer to review the plan and potentially make investor introductions; and

- He "believe[d]" negotiations remained confidential based on Keller's suggestion to continue discussions with Buccella.

At most, such evidence constitutes nothing more than Garcia's subjective beliefs and conclusions, which cannot establish a confidential relationship as a matter of law. *See Campbell v. Fort Worth Bank & Trust*, 705 S.W.2d 400, 402 (Tex. App.—Fort Worth 1986, no writ) (statements based on belief or understanding constitute no evidence); *Jetall Cos. v. Hoover Slovacek LLP*, No. 14-20-00691-CV, 2022 Tex. App. LEXIS 2010, at *18–19 (Tex. App.—Houston [14th Dist.] Mar. 29, 2022, pet. denied) (mem. op.) (subjective concerns amount to mere speculation of no evidentiary value). Additionally, the record of

7

these discussions does not evidence any pre-existing relationship between the parties before Garcia approached Segway about his SegUrWay concept. *Faircloth,* 898 S.W.2d at 280.[6]

Because Garcia produced no evidence of a confidential relationship with Appellees–an essential element of his claim–we hold the court correctly granted the motions for summary judgment. It is therefore unnecessary for the Court to review the additional arguments presented by the parties, including the court's grant of Appellees' traditional motion for summary judgment.

## Conclusion

Concluding the trial court did not err in its grant of summary judgment, we overrule Garcia's two issues and affirm the judgment as to Appellees Segway and Keller.

Lawrence M. Doss
Justice

---

[6] Further undermining Garcia's claim of a confidential relationship is the evidence showing he had already published his plan on fundable.com before initiating communications with Segway in February 2013.