# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00063-CV

---

**Carroll L. Lee, Peggy G. Lee, Lee Concho Valley Family L.P., Sandra Cagle, Jerry D. Lee, Larry G. Lee, and Matthew Lee, Appellants**

**v.**

**Memorial Production Operating, LLC; Grandfield Consulting, Inc.; Boaz Energy, LLC; and Ivory Energy, LLC; Appellees**

---

**FROM THE 51ST DISTRICT COURT OF COKE COUNTY
NO. CV1604622, THE HONORABLE CARMEN DUSEK, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

This case arises from the failure of a saltwater-disposal well on appellants' ranch. Appellants Carroll L. Lee, Peggy G. Lee, Lee Concho Valley Family L.P., Sandra Cagle, Jerry D. Lee, Larry G. Lee, and Matthew Lee sought to recover for damage to their cattle operation and familial enjoyment on the land. The trial court disposed of appellants' many claims through various means including dismissal of some appellants' claims for lack of standing, summary judgment, and judgment based on a jury verdict. Appellants challenge those decisions as well as the trial court's rulings on objections to pleadings and evidence, the court's charge, jury argument, and the sufficiency of the evidence to support the jury's verdict. We will affirm the judgment.

## BACKGROUND

Appellants include landowners Carroll L. Lee and Peggy G. Lee; their children, Sandra Cagle, Jerry D. Lee, Larry G. Lee, and Matthew Lee; and a family partnership, Lee Concho Valley Family L.P.[1] Appellees include companies that owned and/or operated the lease with the failed disposal well over the years: Grandfield Consulting, Inc.; Ivory Energy, LLC; Boaz Energy, LLC (Boaz I); and Memorial Production Operating, LLC. Boaz Energy II, LLC (Boaz II), and Grandfield's owner, Charles Mark Witt, were defendants and have filed briefs. While Memorial Resource Development Corporation was a defendant below, it is not, according to Appellants, a party to this appeal. Neither Boaz II, Witt, nor Memorial Resource Development Corporation were named in the Final Judgment on Jury Verdict.

Carroll and Peggy Lee own the surface estate of land they call the Cedar Mountain Ranch (Ranch) in Coke County. The mineral estate was leased by a previous owner in the 1940s for oil and gas production under the Bronte Capps Unit Lease. Well 5 was drilled for oil and gas production in 1957 and became a saltwater-disposal well called SWD5 as permitted by the Texas Railroad Commission. Grandfield actively operated SWD5 between January 2007 and December 2010, transferring operations to Ivory in March 2011.[2] A company called C.C. Forbes worked on SWD5 for Grandfield in December 2010; Appellants settled and dismissed their claims against C.C. Forbes before trial. After Ivory, Boaz I owned and operated SWD5 from August 2011 to October 2013. Memorial merged with and absorbed Boaz I's liabilities and obligations, owning

---

[1] We refer to appellants collectively as "Appellants." Where necessary to distinguish from the remaining Appellants, we will refer to Carroll and Peggy Lee as "the Lees" exclusive of other appellants named Lee.

[2] Some evidence indicates that Ivory took over actual operation in January 2011 before the transfer of operations was official.

and operating SWD5 from October 1, 2013, until June 1, 2016, when Boaz II became the owner and operator. The purchase and sale agreement between Memorial and Boaz II expressly mentioned the failure of the disposal well.

The wellbore had tubing through which fluid was injected surrounded by a casing with space between the tubing and casing. The well was required to have a device called a mechanical packer designed to block injected water from flowing up from the injection zone into the space between the tubing and casing (and beyond). The mechanical packer was required to be installed within one hundred feet above the injection level. Documents filed with the Railroad Commission state that the mechanical packer was installed 4492 feet below the surface and that injection was occurring beginning at 4576 feet. In September 2014, Memorial injected more barrels of saltwater than the permit authorized on several days.

Ranch foreman Roger Graves testified that, on September 25, 2014, he saw water gushing out of the ground about 150 yards from SWD5. Matt Lee testified that water was bubbling up in all directions. He said, "I can't explain the massive amount of fluid that was coming out of the ground." Pools were constructed to collect the water. Efforts to remediate the effects of the breakout were, according to Appellants, ineffective and created additional problems.

Investigation revealed that the tubing of the well was seriously degraded and that the well had an additional packer installed 260 feet below the surface. This packer was an "EE Packer" and was not designed to work in the same way as a mechanical packer. There was evidence that the EE packer masked any pressure anomalies that could have indicated that the well was failing after more than fifty years of operation. The installation of the EE packer was noted on a wellbore diagram prepared on June 1, 2011, by an Ivory employee. Last on a list entitled "Well Maintenance History" was this entry: "12/20/10 Repl Pkr, EE 8jts down." Ivory

3

representative Lee Beam averred in an affidavit that the entry meant someone replaced an EE packer eight joints (sections of tubing) below the surface and was consistent with the EE packer's being installed 261 feet below the surface. This also put the EE packer impermissibly within 150 feet of usable subsurface water. The presence of the EE packer was not disclosed on H-10 forms (annual disposal/injection-well monitoring reports) submitted by appellees to the Railroad Commission that reported the depth of the tubing packer (4492 feet), the depth of the injection interval (4576 feet to 4676 feet), and the volume injected, nor was it disclosed on Grandfield's H-5 form reporting its December 27, 2010 pressure test that reported a Baker Loc Set packer placed at 4499 feet for a permitted injection interval of 4570 feet to 4675 feet. Grandfield's Witt certified on the H-5 form that "the data and facts stated herein are true, correct and complete to the best of my knowledge."

During the pendency of the case, the trial court made pretrial rulings, some of which are challenged as set out below. After several days of trial testimony, the court submitted the surviving claims to the jury, which did not find any appellee liable for negligence or nuisance. The judge rendered a take-nothing judgment on Appellants' claims.[3]

## DISCUSSION

Appellants present three broad issues asserting that the trial court made erroneous pretrial rulings, trial rulings, and charge errors that, "in isolation or the aggregate," warrant reversal and remand for a new trial. These three issues comprise multiple subissues regarding particular

---

[3] The trial record contains much testimony and evidence about damages to the land and its effect on the Lee family's cattle business and their enjoyment of the land. Because the jury did not reach the damages issues, we will not recount or summarize it in this opinion. *See* Tex. R. App. P. 47.1.

4

rulings concerning different appellees. Appellants also contend that an appellee's jury argument was incurably improper and warrants reversal, and that the jury's no-liability finding is not supported by factually and legally sufficient evidence.

## I. The court allowed Ivory and Grandfield to amend their answers to plead a defense that they acted as reasonably prudent operators.

We review the trial court's decision allowing Ivory and Grandfield to amend their pleadings for an abuse of discretion. *See Lower Valley Water Dist. v. Danny Sander Constr., Inc.*, 657 S.W.3d 404, 408 (Tex. App.—El Paso 2022, no pet.). The trial court has no discretion to deny leave to amend unless (1) the party opposing amendment shows evidence of surprise or prejudice, or (2) the amendment asserts a new cause of action or defense and is thus prejudicial on its face and the opposing party objects accordingly. *Greenhalgh v. Service Lloyds Ins*., 787 S.W.2d 938, 939 (Tex. 1990) (concluding no abuse of discretion in allowing post-verdict amendment of pleadings); *see* Tex. R. Civ. P. 63 (amending pleadings), 66 (trial amendments). Rule 63 provides that leave of court is required only for amendments less than seven days before trial or "after such time as maybe ordered by the judge under Rule 166" and that "leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party." Tex. R. Civ. P. 63. An amendment is prejudicial on its face if: (a) it asserts a new substantive matter that reshapes the nature of the trial itself; (b) the opposing party could not have anticipated it in light of the development of the case up to the time the amendment was requested; and (c) the opposing party's presentation of its case would be detrimentally affected by the amendment. *Tanglewood Homes Ass'n v. Feldman*, 436 S.W.3d 48, 64 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). To determine if the amendment is prejudicial on its face, we must evaluate it in the context of the entire case. *See id.*

Appellants challenge the trial court's grant of leave to Ivory and Grandfield to amend their answers after the scheduling-order deadline but more than seven days before trial.[4] Appellants assert that allowing the amendment was an abuse of discretion because the reasonably-prudent-operator defense is inapplicable to Appellants' claims and legally futile. The defense is set out in the statute Appellants invoke to bring suit. *See* Tex. Nat. Res. Code § 85.321 (establishing cause of action and defense), .046(a)(8) (defining waste). At the trial court, Appellants objected to the amendment on grounds that "waste" was a term of art limited to diminution of mineral interests and did not encompass the conventional property damages and personal loss Appellants sought to recover. Appellants' attorney acknowledged, however, that they were aware of the defense because it is part of the statute but contended that it was inapplicable because they were not alleging waste. One of Appellants' attorneys said that, if the pleading were allowed, excluding the issue from the jury charge could cure any disadvantage to Appellants from the amendment, but Appellants' other attorney argued that the harm would be from allowing these appellees to assert throughout the trial that they were reasonably prudent operators when that was not really an issue before the court.[5]

We conclude that Appellants have not shown that the trial court abused its discretion by allowing Ivory and Grandfield to amend their answers. Though the amendments were offered after years of litigation, the amendments were offered and allowed a week before the close of discovery and more than a month before trial; leave was required under the scheduling order, not

---

[4] Appellees filed their motions in late August 2021, the court granted the motions at a September 7, 2021 hearing, and trial began October 9, 2021.

[5] Appellants assert that the court's inclusion in the jury charge of the reasonably-prudent-operator defense to their negligence claim shows that their prediction of harm was accurate.

6

by general rule.  *See* Tex. R. Civ. P. 63 (leave required within seven days of trial).  Appellants were aware of the defense, the parties could discover and adduce evidence about it at trial, and Appellants could seek to exclude the defense from the jury charge.  The case on which Appellants relied at the trial court to argue that courts should not allow "legally futile" amendments concerned facts and procedures not applicable here.  *See City of Waco v. Lopez*, 259 S.W.3d 147, 156 (Tex. 2008).  In that case, the Texas Supreme Court declined to remand to let a plaintiff amend pleadings after that court reversed and dismissed the case for want of jurisdiction; the court held that no amendment could cure the jurisdictional pleading defects related to immunity.  *Id.*  Here, however, the trial court was not dismissing the cause and jurisdiction did not turn on the amendment.  The leeway courts must give parties to amend their pleadings is evident in the Texas Supreme Court's holding in *Greenhalgh* that the trial court would have abused its discretion by not allowing a *post-verdict* amendment to conform the pleadings to the verdict regarding the amount of damages sought.  *Greenhalgh*, 787 S.W.2d at 939-40.  Given the narrow discretion courts have to refuse amendments, we find no abuse of discretion by the trial court in allowing Ivory and Grandfield to amend their pleadings more than a month before trial to include the reasonably-prudent-operator defense contained in the statute Appellants used as part of the basis for their claims.

## II.     Rulings on summary-judgment motions

Appellants complain of the denial of their motion for summary judgment on Ivory's liability under Texas Natural Resources Code Section 85.321, the grant of summary judgments to Boaz II and Witt, and the grants of summary judgment to Grandfield and Ivory on Appellants' breach-of-contract claims.

7

A.   **Denial of Appellants' summary-judgment motion on Ivory's liability under Section 85.321.**

Appellants contend that the trial court erred by denying their cross-motion for summary judgment that Ivory was liable for negligence under Texas Natural Resources Code section 85.321 based on an admission that Ivory possessed a wellbore diagram that documented the presence of the EE packer. Appellants contend that they were entitled to summary judgment on that element of their claim of negligence, reserving for trial the amount of damages. They argue that the trial court's take-nothing judgment shows the harm from the trial court's denial of their motion.

Generally, a denial of a motion for summary judgment is not eligible for appellate review because it is not a final judgment. *National Union Fire Ins. Co. v. Insurance Co. of N. Am.*, 955 S.W.2d 120, 125 (Tex. App.—Houston [14th Dist.] 1997, pet. denied) (citing *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996)). An appeal from such denial is proper when the denial is: (1) based on an assertion of immunity by an officer or employee of the state or its political subdivision or (2) based at least in part upon a claim against or defense by a member of the media, acting in such capacity, or a person whose communication appears in or is published by the media, arising under the free-speech or free-press clauses of the state or federal constitution. *Id*. Appellants cite a case authorizing review of a denial of a summary-judgment when we review the grant of a competing motion for summary judgment on the same issue. *McCreight v. City of Cleburne*, 940 S.W.2d 285, 288 (Tex. App.—Waco 1997, writ denied).

None of these exceptions to the general rule of non-reviewability of summary-judgment denials are presented here. After the trial court denied summary judgment on the issue of Ivory's liability under Section 85.321, the issue was resolved by the jury against

Appellants. Appellate courts do not review a trial court's denial of summary judgment when a trial on the merits occurs and a judgment is entered on the same issue. *Ackermann v. Vordenbaum*, 403 S.W.2d 362, 365 (Tex. 1966); *Casa Palmira, LP v. Taylor Child Care, LP*, 632 S.W.3d 11, 22 (Tex. App.—El Paso 2020, no pet.) (citing *Gem Homes, Inc. v. Contreras*, 861 S.W.2d 449, 453 (Tex. App.—El Paso 1993, writ denied)). Accordingly, we are precluded from reviewing the trial court's denial of summary judgment.

**B.     Grant of summary judgments for Witt and Boaz II.**

Appellants challenge the grants of traditional and no-evidence motions for take-nothing summary judgment on claims against Witt and Boaz II. However, Witt and Boaz II are not parties to this case despite their filing of briefs in this appeal.

The live pleading, Plaintiffs' Fourth Amended Petition—filed after the summary judgments were granted—omitted Witt and Boaz II as parties. An amended pleading supersedes and supplants the original pleading. Tex. R. Civ. P. 65; *Phifer v. Nacogdoches Cnty. Cent. Appraisal Dist.*, 45 S.W.3d 159, 172 (Tex. App.—Tyler 2000, pet. denied). An amended petition that omits a previously named defendant operates as a voluntary dismissal or nonsuit as to that party. *Webb v. Jorns*, 488 S.W.2d 407, 409 (Tex. 1972). The effect of a nonsuit is equivalent to a suit never having been filed. *Thompson Hancock Witte & Assocs., Inc. v. Stanley Spurling & Hamilton, Inc.*, 650 S.W.3d 741, 746 (Tex. App.—Houston [14th Dist.] 2022, no pet.). This nonsuit effect applies when claims involving a party are resolved by interlocutory summary judgment and the party is then omitted from an amended petition filed before the remaining live claims are resolved by a later final judgment. *Alpha Pay Phones, Ltd. III v. Mankoff, Hill, Held & Metzger, P.C.*, No. 05-97-01610-CV, 2000 WL 688176, at *4 (Tex. App.—Dallas May 30, 2000, no pet.) (not designated for publication). In *Alpha Pay Phones*, a plaintiff whose claims were

resolved by interlocutory summary judgment had its claims nonsuited when it and its claims were omitted from a subsequent amended petition. *Id.* The court of appeals held that the plaintiff nonsuited and could not complain of the grant of the take-nothing summary judgment rendered against its claims. *Id.*

Here, the fourth amended petition omitted Witt and Boaz II as parties. It mentions Witt's actions as owner/principal of Grandfield and does not mention Boaz II at all. It omits both Witt and Boaz II from the style of the case, from the recitation that defined the "Defendants" against whom claims were made, and from the section of the petition that described the parties. The fourth amended petition includes in the certificate of service counsel for Witt, who was also counsel for Grandfield, but does not list Boaz II at all. The final judgment does not include Witt and Boaz II in its style or body. The fourth amended petition nonsuited claims against Boaz II and Witt as if they were never filed. Thus, Boaz II and Witt are not properly parties to this appeal, and there are no claims against them to review or remand. Appellants have not demonstrated a basis on which we can reverse the judgment on these claims.

**C.    Grant of summary judgments to Grandfield and Ivory on breach-of-contract claims.**

We review the grant of a motion for summary judgment de novo. *Texas Mun. Power Agency v. Public Util. Comm'n*, 253 S.W.3d 184, 192 (Tex. 2007). We take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005) (traditional motion); *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006) (no-evidence motion). A traditional summary judgment is proper when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tex. R. Civ. P.

166a(c); *see also Mangham v. YMCA of Austin, Tex.-Hays Cmties.*, 408 S.W.3d 923, 926 (Tex. App.—Austin 2013, no pet.). A trial court properly grants a no-evidence summary judgment if the nonmovant produces no more than a scintilla of probative evidence—that is, if the nonmovant's evidence does not rise to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 625 (Tex. 2018). The court must grant the motion unless the nonmovant raises a genuine issue of material fact on each challenged element. Tex. R. Civ. P. 166a(i). When the trial court's order granting summary judgment does not specify the grounds relied upon, the reviewing court must affirm the summary judgment if any of the summary-judgment grounds is meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

Grandfield asserted in its motion in part that Appellants could adduce no evidence of any valid contract between Appellants and Grandfield or that Appellants were a proper party to sue Grandfield for breach of contract. The elements of a breach-of-contract claim are (1) the existence of a valid contract between the parties, (2) performance (or excuse) by the party asserting the claim, (3) breach of the terms of the contract by another party, and (4) damages resulting from the breach. *See, e.g.*, *C.W. 100 Louis Henna, Ltd. v. El Chico Rests., L.P.*, 295 S.W.3d 748, 752 (Tex. App.—Austin 2009, no pet.). When the owner of a fee-simple estate severs the mineral estate by a conveyance, five rights are conveyed to the transferee or grantee: "(1) the right to develop, (2) the right to lease, (3) the right to receive bonus payments, (4) the right to receive delay rentals, and (5) the right to receive royalty payments." *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 49 (Tex. 2017). Thus, Appellants needed to adduce proof that they were the mineral-rights owner/lessor or otherwise party to the lease in order to show that they were proper parties to sue on the lease. *See Grinnell v. Munson*, 137 S.W.3d 706, 714 (Tex. App.—San Antonio

11

2004, no pet.) (surface owner was not party to leases and lacked standing to challenge their validity directly or as beneficiary of company that had royalty interest). Appellants produced evidence that they own the surface estate but did not produce evidence that they are the successor owners of the mineral estate and thus successor lessors of the mineral estate.[6] The absence of proof that Appellants were parties to the contract renders immaterial Appellants' argument that conflicting evidence existed regarding whether Grandfield was party to the lease. Appellants have not shown that the trial court erred by granting Grandfield's no-evidence motion for summary judgment on their breach-of-contract claim against Grandfield.

Ivory moved for traditional summary judgment on grounds that it proved conclusively that it was not a party to the lease Appellants alleged it breached. Appellants alleged that Grandfield assigned the lease to Ivory on March 14, 2011, but Ivory produced evidence that Grandfield had previously assigned all its rights under the lease effective January 1, 2011, to Nyala, Inc., who later assigned it to Boaz I effective July 1, 2011. Though Appellants contended that these documents created a fact issue as to whether *Grandfield* was a party to the lease, they did not rebut the evidence that *Ivory* was not part of the chain of successive assignees and was not party to the lease. Appellants have not shown that the trial court erred by granting Ivory's traditional motion for summary judgment on their breach-of-contract claim against Ivory.

III.     **Directed verdict for Memorial on breach-of-contract claim.**

Appellants assert that the trial court erred by granting Memorial's motion for directed verdict on their claim for breach of contract against Memorial. We review the grant of a

---

[6] At trial, Larry Lee, the Lees' eldest son who oversees the ranch testified that his family does not own the mineral rights under Cedar Mountain.

directed verdict under the same legal-sufficiency standard that applies to no-evidence summary judgments. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). We sustain a legal-sufficiency point when (1) there is a complete absence of evidence regarding a vital fact, (2) rules of law or evidence preclude according weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *Id.* at 810; *RSL-3B-IL, Ltd. v. Prudential Ins.*, 470 S.W.3d 131, 135 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). To prove breach of contract, a plaintiff must prove that a valid contract existed between the parties. *Roundville Partners, L.L.C. v. Jones*, 118 S.W.3d 73, 82 (Tex. App.—Austin 2003, pet. denied) (setting out elements of breach of contract).

The Lees undisputedly own the surface estate and presented the original 1940s mineral lease sued upon. The Lees alleged that they were successors to the mineral lease, but we find no evidence establishing who is the current mineral lessor who would be party to the contract. Rather, Larry Lee, the Lees' eldest son who oversees the ranch, testified as follows:

Q (BY MR. BROWN) Does your family own the mineral rights under Cedar Mountain?

A No.

This unequivocal and unrebutted denial that the Lees own the mineral rights shows that the mineral estate has been severed from the surface estate. This view is consistent with the Lees' counsel's assertion, when objecting to the absence of a trespass instruction during the charge conference, that the "contaminants and other fluids and materials *escaped the mineral estate* and ended up in *the surface estate and property owned by the Lees*." When the mineral estate is severed from the surface estate, the grantee of the mineral estate retains the right to develop, lease, and receive bonus

payments, delay rentals, and royalty payments. *Lightning Oil*, 520 S.W.3d at 49. As the evidence shows that the Lees are not the mineral-rights owners, it shows that they do not have the right to lease the minerals and thus that they are not the successors to the original mineral lessors on the mineral lease.

There is a surface-use or surface-lease agreement between C.L. Lee and Memorial, but Appellants stated in briefing at the trial court that the surface-use agreement "has no bearing on the Lee Plaintiffs' contract claim under the lease." When granting the directed verdict on Appellants' contract claim against Memorial, the trial court echoed that assertion by stating that the surface-use agreement "is not the contract that Plaintiffs contend was breached." The trial court did not err in granting a directed verdict on this issue because the record conclusively established the opposite of a fact vital to Appellants' breach-of-contract claim.[7]

## IV.    Jury charge

Appellants assert that the trial court made several errors in the jury charge. The parties filed proposed jury charges, the court had an informal charge conference largely off the record on November 1, 2021, and the court presented its proposed charge and held a formal charge conference before hearing closing argument on November 2, 2021.

We review the trial court's submission of instructions and jury questions for an abuse of discretion. *Thota v. Young*, 366 S.W.3d 678, 687 (Tex. 2012); *Rosell v. Central W. Motor*

---

[7] This conclusion also supports a conclusion that any error by the trial court in granting a take-nothing summary judgment on Appellants' claims against Ivory and Grandfield for breach of the mineral lease was harmless. *See Progressive Cnty. Mut. Ins. v. Boyd*, 177 S.W.3d 919, 921 (Tex. 2005). Because the evidence at trial showed that Appellants are not parties to the mineral lease, they could not have recovered for breaches of that lease by Ivory and Grandfield. Accordingly, any error in the granting of summary judgment on their claims against Ivory and Grandfield was harmless.

*Stages, Inc.*, 89 S.W.3d 643, 653 (Tex. App.—Dallas 2002, pet. denied). The trial court has broad discretion in submitting jury questions as long as the questions submitted fairly place the disputed issues before the jury. *Rosell*, 89 S.W.3d at 653. To determine whether an alleged error in the jury charge is reversible, we must consider the pleadings of the parties, the evidence presented at trial, and the charge in its entirety to determine if the trial court abused its discretion. *Id.* A reversal is warranted when the trial court denies a proper submission of a valid theory of recovery raised by the pleadings and evidence. *Id.* Otherwise, we do not reverse unless the error probably caused the rendition of an improper judgment. Tex. R. App. P. 44.1; *Rosell*, 89 S.W.3d at 653.

The Texas Supreme Court has held that "the singular test for preservation of error is whether a party made the trial court aware of the complaint, timely and plainly, and obtained a ruling." *State Dept. of Hwys. & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992). But the Texas Supreme Court has adopted and retains several rules that describe how and when litigants must make the court aware of their complaints about the jury charge timely and plainly to preserve their complaints for appellate review. *See* Tex. R. App. P. 33.1 (to preserve issue for appeal, litigant must complain to trial court by timely request, objection, or motion); Tex. R. Civ. P. 272-74, 276, 278-79 (collectively describing process for requesting and objecting to elements of jury charge). The requirements vary based on whether the litigant bears the burden of proof on the issue that is the subject of the proposed instruction or question and whether the trial court omits or gives a contested instruction or question. *See* Tex. R. Civ. P. 272-74, 276, 278-79. The Texas Supreme Court harmonized its call for "one test" in *Payne* with the justification for the rules for preserving charge error:

> *Payne's* cure must not worsen the disease. Trial courts lack the time and the means
> to scour every word, phrase, and omission in a charge that is created in the heat of

15

trial in a compressed period of time. A proposed charge, whether drafted by a party or by the court, may misalign the parties; misstate the burden of proof; leave out essential elements; or omit a defense, cause of action, or (as here) a line for attorney's fees. Our procedural rules require the lawyers to tell the court about such errors before the charge is formally submitted to a jury. Tex. R. Civ. P. 272. Failing to do so squanders judicial resources, decreases the accuracy of trial court judgments and wastes time the judge, jurors, lawyers, and parties have devoted to the case. *In the Interest of B.L.D.*, 113 S.W.3d 340, 350 (Tex. 2003) (discussing the "[i]mportant prudential considerations [that] underscore our rules on preservation").

*Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 829-30 (Tex. 2012).

To preserve a complaint of jury-charge error, appellants must object to the jury charge in writing or on the record and obtain a ruling from the trial court during the charge conference after the close of the evidence, but before the charge is read to the jury. Tex. R. Civ. P. 272; *Cruz*, 364 S.W.3d at 829. An appellant preserves a complaint about error in the jury charge by making the trial court aware of the complaint, timely and plainly, and obtaining a ruling. *Cruz*, 364 S.W.3d at 829. "Our procedural rules state that a complaint to a jury charge is waived unless specifically included in an objection." *Id.* (citing Tex. R. Civ. P. 274; Tex. R. App. P. 33.1(a)(1)). An appellant asserting that the trial court improperly omitted an instruction or question in the court's charge must do more than object to preserve its complaint for appeal; an appellant must request and tender to the trial court a substantially correct instruction or question in writing. Tex. R. Civ. P. 278; *Patriot Contracting, LLC v. Shelter Prod., Inc.*, 650 S.W.3d 627, 651 (Tex. App.—Houston [1st Dist.] 2021, pet. denied).

A. **Reasonably prudent operator**

Appellants complain that the trial court improperly included an instruction on the defense to the negligence claim that appellees acted as reasonably prudent operators. The court instructed the jury on negligence and on the reasonably-prudent-operator defense as follows:

16

"Negligence," with respect to an oil and gas operator or contractor, means failure to use ordinary care, that is, failing to do that which an operator or contractor of ordinary prudence would have done under the same or similar circumstances or doing that which an operator or contractor of ordinary prudence would not have done under the same or similar circumstances.

. . . .

Further, with respect to Memorial, the law requires the following, and a failure to comply with the law is "negligence" in itself, except it is a defense that the operator was acting as a reasonably prudent operator would act under the same or similar facts and circumstances.

Appellants contend that the reasonably-prudent-operator defense is inapplicable, futile, confusing, and not supported by evidence that it was reasonably prudent for appellees to disregard mandates of permit conditions or regulations. Appellants objected before trial on September 7, 2021, to the amendment of appellees' pleadings to include the defense; reminded the court during a midtrial hearing on motions for directed verdict on October 28, 2021, that Appellants believed the defense was applicable only to cases involving waste; and submitted a proposed jury instruction on October 31, 2021, that excluded the defense. Appellants assert that these actions called the court's attention to their position sufficiently to satisfy the standard in *Payne*, 838 S.W.2d at 239-40. In that case, the Texas Supreme Court held that the appellant's written proposal of a particular jury-charge instruction sufficiently called the court's attention to the appellant's desire for submission of that instruction to preserve for appellate review the omission of the instruction. *Id.*

But, at the November 2, 2021 formal charge conference, Appellants' stated objections to the charge did not include any mention of the court's inclusion of the reasonably-prudent-operator defense in the negligence charge. This case resembles *Cruz*, in which the party complaining of the omission of a jury question submitted a proposed charge four days before trial

17

that included the omitted charge. 364 S.W.3d at 830. After the two-week trial, the court gave the parties a proposed charge that omitted the requested subpart of the charge. After an informal charge conference, the court held a formal charge conference at which the complaining party raised only one objection—not the one it raised on appeal. *Id.* The party asserted on appeal that the court's failure to include its requested charge constituted a "clear refusal" to submit its proposed question in the multipart 40-page jury charge. *Id*. Balancing its 1992 plea in *Payne* for simplicity in preservation requirements, the 2012 Texas Supreme Court held that the party in *Cruz* failed to preserve the complaint for appeal because its pretrial proposed charge alone did not sufficiently alert the trial court to the omission of the party's requested subpart of a question when not coupled with an objection at the charge conference—particularly when another objection was made at the charge conference. *Id.* The court contrasted *Cruz* with *Payne*, concluding that in *Payne* the party's request for a subsequently omitted instruction combined with an imprecise objection to the instruction given to alert the trial court to the complaint. *Id.*; *see also Alaniz v. Jones & Neuse, Inc.*, 907 S.W.2d 450, 452 (Tex. 1995) (per curiam) (plaintiff preserved error regarding court's failure to include subpart for lost profits within broad-form damage question where plaintiff both filed proposed charge pretrial and objected during charge conference to omission of requested element). The court in *Cruz* relied on Rule 272, which provides:

> [The proposed jury charge] shall be submitted to the respective parties or their attorneys for their inspection, and a reasonable time given them in which to examine and present objections thereto outside the presence of the jury, which objections shall in every instance be presented to the court in writing, or be dictated to the court reporter in the presence of the court and opposing counsel, before the charge is read to the jury. **All objections not so presented shall be considered as waived.**

Tex. R. Civ. P. 272 (emphasis added); *see also Cruz*, 364 S.W.3d at 830.

Here, Appellants submitted their last proposed charge during trial before the informal trial conference and two days before the formal charge conference. The 15-page charge included the disputed defense, and Appellants stated some objections to the charge but not to the disputed defense. In these circumstances, we conclude that Appellants did not satisfy Rule 272's requirement that they make the court aware of their continued challenge to the inclusion of the defense in the jury charge. *See Cruz*, 364 S.W.3d at 830-31. Appellants waived any error in the inclusion of the reasonably-prudent-operator defense in the jury charge.

### B. Intentional nuisance

Appellants similarly complain that the trial court improperly refused to charge on Appellants' intentional-nuisance claim. They assert that the trial court misconstrued "intent" in the context of a nuisance complaint and charged only a negligence-based nuisance. Appellants filed the proposed jury instruction but did not object to this omission of the intentional-nuisance claim in writing or in the recorded charge conference. This complaint was waived. *See id.*

### C.    *Forest Oil* instruction

Appellants contend that the trial court erred by failing to instruct the jury that compliance with Texas Railroad Commission cleanup standards is not a defense to civil liability. *See Forest Oil Corp. v. El Rucio Land & Cattle Co.*, 518 S.W.3d 422, 430 (Tex. 2017) ("[W]hile RRC regulations and orders certainly inform the extent to which remediation of contamination is required by law, they do not supplant Forest's common-law duties, which are also required by law."). At the formal charge conference, Appellants asserted, "With respect to the Texas Railroad Commission remediation standards found in Question 3, we respectfully submit there should be a balancing instruction in accordance with the *Forest Oil* case." But Question 3 in the jury charge given does not concern remediation standards; instead, it asks the jury to apportion a percentage

19

of responsibility for causing or contributing to cause the "occurrence in question," which the charge defined as "the surface breakout on the Cedar Mountain Ranch in 2014." Question 3 in Appellants' last proposed jury charge proposed asking whether the defendants damaged the Ranch by violating the permit or specified laws, but none of the listed laws mentions compliance with remediation standards. In objecting, Appellants did not present or refer to a specific instruction that was excluded, nor do they do so in their appellate briefs; Appellants' last jury charge proposed a special instruction that references *Forest Oil*[8] unconnected to any particular jury question.

Appellants have not presented an issue to us that was presented and preserved at trial. Further, the *Forest Oil* instruction last proposed by Appellants relates to compliance with remediation standards, but the jury charge by definition expressly asks about responsibility for the breakout, not damages caused by noncompliance with remediation standards. Although the jury questions on damages could have included remediation expenses, they do not mention compliance with remediation statutes as a mitigating factor that needed "a balancing instruction" as requested by Appellants. We conclude that Appellants have not shown reversible error in the absence of a *Forest Oil* instruction from the jury charge.

## D.    Trespass

Appellants assert that the trial court improperly refused to charge the jury on their trespass claim. They submitted a trespass charge in their proposed jury charge on October 31, 2021, but the court announced on the morning of trial at the formal charge conference that it would

---

[8] The proposed instruction read in relevant part, "You are instructed that the Texas Railroad Commission's authority does not exclude Defendants' legal obligations addressed in this Jury Charge, and any determinations made by the Texas Railroad Commission do not supplant Defendants' legal obligations addressed in this Jury Charge." The proposed charge then cited *Forest Oil* in a footnote.

20

not submit a trespass charge.  The court noted that the "unique circumstances" of the case and how the causes of action fit together meant that the trespass charge would not "add to the charge."  The court noted that the measure of damages for trespass would be the same as for negligence and opined that inclusion of a trespass charge could cause confusion "because all of the aspects of what would be encompassed in trespass are already encompassed in the negligence issue as far as causation and as far as the measure of damages."

Appellants objected to the exclusion of the trespass charge on several bases:

> [T]respass should be included, because the plaintiffs have shown at least three trespass events, one by all of the defendants which arises from the surface breakout itself where contaminants and other fluids and materials escaped the mineral estate and ended up in the surface estate and property owned by the Lees.
>
> The second element of trespass stems from evidence that is in the record in the form of Exhibit 111, I believe, which is a letter from Mr. McPherson to Memorial discussing, eleven months after the surface breakout, that Memorial is using the Lees' property to move about without authorization.
>
> And the third trespass, of course, involves the use of the Lees' property to execute the response at the site which involved the contamination of more amounts of soil than those that were owned by the surface estate.

Appellants did not submit a trespass charge at that time.  The trial court overruled the objection and submitted the charge without a trespass charge.

On appeal, Appellants contend that the omission of the trespass charge was error because trial courts can refuse to submit an issue only if no evidence warrants its submission, citing *Brown v. Goldstein*, 685 S.W.2d 640, 641 (Tex. 1985).  Appellants assert that trespass has different elements than does negligence—a difference compounded by the addition of the reasonably-prudent-operator defense that would not have been part of the trespass instruction.  They argue

that if they recovered redundant awards for trespass and negligence they could be required to elect a remedy, but that the court erred by refusing to submit the trespass charge.

Appellants' argument that evidence and differences in elements warranted the submission of a trespass charge shows no error on this record. To recover damages for trespass to real property, a plaintiff must prove that (1) the plaintiff owns or has a lawful right to possess real property; (2) the defendant entered the plaintiff's land and the entry was physical, intentional, and voluntary; and (3) the defendant's trespass caused injury to the plaintiff. *Environmental Processing Sys., L.C. v. FPL Farming Ltd.*, 457 S.W.3d 414, 424-25 (Tex. 2015). At first glance, this tort appears distinct from negligence as defined in the court's charge.[9] The intent element of trespass requires proof of interference with the right of possession of real property; the relevant intent is that of the actor to enter the property. *Wilen v. Falkenstein*, 191 S.W.3d 791, 798 (Tex. App.—Fort Worth 2006, pet. denied). If the act intended would necessarily violate a property right, the actor is liable regardless whether the actor knows the act to be a violation, and that liability may extend to unintended consequences. *General Tel. Co. of Sw. v. Bi-Co Pavers, Inc.*, 514 S.W.2d 168, 170 (Tex. App.—Dallas 1974, no writ); *Schronk v. Gilliam*, 380 S.W.2d 743, 746 (Tex. App.—Waco 1964, no writ). Plaintiffs must present evidence that the defendant intended to commit a trespass that violated the plaintiff's property rights or would be practically certain to violate their rights. *Id.*; *see also Texas Woman's Univ. v. The Methodist Hosp.*, 221 S.W.3d 267,

---

[9] As set out above, the trial court defined negligence as follows:

"Negligence," with respect to an oil and gas operator or contractor, means failure to use ordinary care, that is, failing to do that which an operator or contractor of ordinary prudence would have done under the same or similar circumstances or doing that which an operator or contractor of ordinary prudence would not have done under the same or similar circumstances.

22

286 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Plaintiffs must prove that the defendant intentionally committed the act that constitutes a trespass even though it need not show that the defendant intended to trespass. *Stukes v. Bachmeyer*, 249 S.W.3d 461, 466 (Tex. App.—Eastland 2007), *abrogated on other grounds by Environmental Processing Sys.*, 457 S.W.3d at 423-25.

But, unless the intended act would violate a property right, the actor's liability for unintended consequences ordinarily depends upon proof of negligence. *Bi-Co Pavers*, 514 S.W.2d at 170. Here, though appellees operated the well, there is no evidence that they intentionally operated it with the shallow packer. In *Texas Woman's University*, TWU contended that Methodist diverted floodwaters from its garage that eventually flooded TWU facilities. 221 S.W.3d at 270-71. The court of appeals affirmed the summary judgment for Methodist because "TWU presented no evidence that Methodist failed to timely install its flood protection devices and take other reasonable measures with the intent to flood both Methodist and TWU." *Id.* at 286. The court held that TWU's allegations concerning Methodist's failures to act were based on negligence, not intentional acts. *Id.* Here, the trial court's conclusion that the trespass charge would add nothing to the negligence charge is consistent with a conclusion that the record contained no evidence that appellees intended any act that trespassed or would be practically certain to violate Appellants' rights. Our review of the record reveals no evidence that the appellees intended any act or omission that violated or was practically certain to violate Appellant's property rights, and thus no error in the trial court's decision not to charge the jury on trespass.

Even if the omission of the trespass charge were error, the jury's "no" finding on the negligence question with regard to each appellee rendered such error harmless. Appellants argue that the trespass charge would not have been subject to the reasonably-prudent-operator defense, but a negligence finding requires proof of the existence of a duty, a breach of that duty, a

23

resulting injury, and the foreseeability to a reasonably prudent person that such an injury was a likely result of the breach. *Boyles v. Kerr*, 855 S.W.2d 593, 614 (Tex. 1993). The reasonable prudence of the defendants/appellees was part of the trial court's definition of negligence independent of the reasonably-prudent-operator instruction. As discussed below, the jury's finding of "no" regarding negligence is supported by factually and legally sufficient evidence. Because the jury did not find negligence on this record, it would not have found trespass, and any error in the refusal to give the trespass charge was harmless. Our conclusion that the trial court did not err in refusing to charge the jury on trespass renders moot Appellants' argument in their reply brief that overlap between negligence and trespass claims should be resolved by election of remedies.

## V.    Incurable jury argument

Appellants complain of jury argument they contend was harmful and incurable. Ordinarily, improper jury argument must be preserved by a timely, overruled objection. *Living Ctrs., Inc. v. Penalver*, 256 S.W.3d 678, 680-81 (Tex. 2008). An appellant who does not timely object to jury argument may move for a new trial and complain that prejudice from the argument was incurable. *Phillips v. Bramlett*, 288 S.W.3d 876, 883 (Tex. 2009); *see also* Tex. R. Civ. P. 324(b)(5) (new trial). Typically, retraction of the argument or an instruction from the court can cure any probable harm. *Penalver*, 256 S.W.3d at 680. To merit reversal, the record as a whole must show that the offensive argument was so extreme that it could convince a juror of ordinary intelligence to agree to a verdict contrary to the verdict the juror would have agreed to but for the argument. *Phillips*, 288 S.W.3d at 883. The appellant must show that the argument was so extreme that an instruction or retraction could not remove its effect. *Penalver*, 256 S.W.3d at 680-81. Generally, incurable argument encompasses statements that "strike at the courts' impartiality,

equality, and fairness" because they "inflict damage beyond the parties and the individual case under consideration if not corrected." *Id.* at 681. Instances of incurable jury argument include appeals to racial prejudice; unsupported charges of perjury; unsupported, extreme, and personal attacks on opposing parties and witnesses; and baseless accusations of witness tampering. *Metropolitan Transit Auth. v. McChristian*, 449 S.W.3d 846, 855 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

Memorial's attorney asserted during argument that the Lees were "asking for somewhere around a hundred seventy million dollars for damage to a three and a half million dollar ranch. I just don't think that's fair. Oh, by the way, they get to keep the ranch. So they still have the ranch." The factual assertions are within the evidence and Appellants' own argument. The Lees testified that, though their enjoyment of the Ranch was reduced, they never considered selling it—Peggy Lee testified they were staying at the Ranch during the trial—and their appraisal expert valued the land consistently with the Lees' financial statements over the course of seven years that valued the Ranch between $3.4 million and $3.6 million. Appellants' expert testified that restoring the Ranch to pre-breakout state would cost between $545 million to $654 million, and during their own jury argument Appellants requested $121,839,000 for repairs, $1,062,506 for diminution in value, and up to $45 million for annoyance and discomfort for a total of $167,901,506—an amount that is reasonably "somewhere around" $170 million. Finally, Memorial's attorney's assessment that he did not think the total requested was "fair" bears on the instruction that the jury should determine the sum of money that would "fairly and reasonably" compensate Appellants.

Appellants complain that this argument was nevertheless inaccurate and unfair because (1) they would not be able to recover all of the damage amounts in evidence but (2) they had to present evidence of all the mutually exclusive classes of damages to avoid waiver of any

25

particular type.[10] Appellants contend that the argument perpetuated a false perception that they are not victims "but rapacious, exploitative and immoral." They contend that there was no way to fix that perception because any action (presumably, objection or instruction) would have drawn more attention to these "egregiously misleading comments regarding the purported effect of the jury's answers."

We conclude that a reasonable juror would not have understood the argument to be the moral indictment Appellants argue it was and that the argument was not so extreme that an instruction or retraction could not remove any such effect. It is not like an attack on the fairness of the court system, an appeal to racism, or unfounded accusations of perjury or witness tampering that have been held to be incurable argument. *See Penalver*, 256 S.W.3d at 680-81; *McChristian*, 449 S.W.3d at 855. The amounts of damages Memorial aggregated in its argument were in evidence and Appellants' argument. To the extent that aggregating them was misleading, the jurors could have been instructed to disregard Memorial's totaling of the damages requested and reminded of the court's instruction that they "not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment." We conclude that the argument based on evidence before the jury was not so extreme that it could convince a juror of ordinary intelligence to agree to a verdict contrary to the verdict the juror would have agreed to but for the argument. *See Phillips*, 288 S.W.3d at 883. We overrule Appellants' complaint about Memorial's jury argument.

---

[10] *See Gilbert Wheeler, Inc. v. Enbridge Pipelines (E. Tex.), L.P.*, 449 S.W.3d 474, 479-81 (Tex. 2014) (plaintiffs should present evidence of both temporary and permanent damages to support damages under theory that court decides applies as a matter of law).

## VI. Sufficiency of the evidence to support the "no" finding on negligence

Appellants assert that there was no basis in law or fact to "exonerate" appellees because they did not present defenses calculated to rebut either that appellees operated SWD5 in violation of the permit and regulations or that the illegal condition of SWD5 caused its failure.

Appellants challenge the verdict on their negligence claim on which they bore the burden of proof. When a party attacks the legal sufficiency of the evidence supporting an adverse finding on an issue on which it bears the burden of proof, the judgment must be sustained unless the record conclusively establishes all vital facts in support of the issue. *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017). Evidence is legally insufficient to support a jury finding when (1) the record bears no evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *Id*. When determining whether legally sufficient evidence supports a finding, we must consider evidence favorable to the finding if the factfinder could reasonably do so and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Id*. We also view the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *City of Keller*, 168 S.W.3d at 822.

When a party attacks the factual sufficiency of the evidence to support an adverse finding on which it had the burden of proof, it must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence and that the verdict is clearly wrong, unjust, or manifestly erroneous. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam); *Nelson v. Najm*, 127 S.W.3d 170, 174 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

27

We must examine the evidence that both supports and contradicts the jury's verdict in a neutral light. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We still defer to the jury's determinations of credibility and weight to be given to the evidence. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). Jurors are the sole judges of the credibility of the witnesses and the weight to give their testimony. *City of Keller*, 168 S.W.3d at 819. They may choose to believe one witness and disbelieve another. *Id*. Reviewing courts cannot impose their own opinions to the contrary. *Id*.

When an issue of material fact is submitted to the jury, the sufficiency of the evidence is measured by the questions and instructions in the charge. *See Regal Fin. Co. v. Tex Star Motors, Inc.*, 355 S.W.3d 595, 601 (Tex. 2010) (noting that evidentiary sufficiency must be measured against jury charge). The jury charge on negligence was as follows:

> Did the negligence, if any, of those named below proximately cause the occurrence in question?
>
> "Negligence," with respect to an oil and gas operator or contractor, means failure to use ordinary care, that is, failing to do that which an operator or contractor of ordinary prudence would have done under the same or similar circumstances or doing that which an operator or contractor of ordinary prudence would not have done under the same or similar circumstances.
>
> The law additionally requires all of the following of persons operating saltwater disposal wells, and a failure to comply with the law is "negligence" in itself, except it is a defense that the operator was acting as a reasonably prudent operator would act under the same or similar facts and circumstances.
>
>> • Wells drilled or converted for injection shall be equipped with tubing set on a mechanical packer. Packers shall be set no higher than 200 feet below the known top of cement behind the long string casing but in no case higher than 150 feet below the base of usable quality water.
>>
>> • The mechanical integrity of an injection well shall be evaluated by conducting pressure tests to determine whether the well tubing, packer,

or casing have sufficient mechanical integrity to meet the performance standards of Texas Railroad Commission rules.

• No person conducting activities subject to regulation by the Texas Railroad Commission may cause or allow pollution of surface or subsurface water in the state.

• A person may not knowingly render inaccurate any monitoring device required to be maintained by a Texas Railroad Commission rule, order, or permit.

Further, with respect to Memorial, the law requires the following, and a failure to comply with the law is "negligence" in itself, except it is a defense that the operator was acting as a reasonably prudent operator would act under the same or similar facts and circumstances.

The operator shall report to the appropriate District Office within 24 hours any significant pressure changes or other monitoring data indicating the presence of leaks in the well.

"Ordinary care" means that degree of care that would be used by an operator or contractor of ordinary prudence under the same or similar circumstances.

"Proximate cause" means a cause, unbroken by any new and independent cause, that was a substantial factor in bringing about an occurrence, and without which cause such occurrence would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the occurrence, or similar occurrence, might reasonably result therefrom. There may be more than one proximate cause of an occurrence.

"New and independent cause" means the act or omission of a separate and independent agency, not reasonably foreseeable, that destroys the causal connection, if any, between the act or omission inquired about and the occurrence in question and thereby becomes the immediate cause of such occurrence.

The jury answered "No" with regard to negligence by Grandfield, CC Forbes, Ivory, and Boaz/Memorial.

Even if we assume Appellants are correct and the record conclusively shows that appellees were negligent per se for violating statutes, Appellants were required to prove that such negligence was a proximate cause of their damages as plaintiffs in ordinary negligence claims must. *See Reinicke v. Aeroground, Inc.*, 167 S.W.3d 385, 389 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (citing *Missouri Pac. R.R. Co. v. American Statesman*, 552 S.W.2d 99, 103 (Tex. 1977)). The factfinder must decide whether the negligent act (1) set in motion a natural and unbroken chain of events that led directly to the injury or (2) merely furnished a condition that made it possible for the injury to instead result from a separate act of negligence. *IHS Cedars Treatment Ctr. v. Mason*, 143 S.W.3d 794, 799 (Tex. 2003). If the evidence shows only a mere possibility that the plaintiff's injuries arose from the defendant's negligence, or if it shows more than one equally probable cause, for any of which the defendant was not responsible, then the evidence is legally insufficient to support a finding of causation. *Reinicke*, 167 S.W.3d at 389 (citing *Hart v. Van Zandt*, 399 S.W.2d 791, 792-93 (Tex. 1965)). Although a finding of cause-in-fact may be based on either direct or circumstantial evidence, it cannot be supported by mere conjecture, guess, or speculation. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003). Therefore, the causation evidence must show that the injury would not have occurred if the negligence had not occurred. *Reinicke*, 167 S.W.3d at 389.

All three appellees denied having any knowledge that the shallow EE packer was in place. Grandfield was the operator of the well when, some evidence indicated, the packer was installed. Witt testified that he had no knowledge of Grandfield ever buying an EE packer. He denied authorizing C.C. Forbes to install an EE packer on the well, to run the well with an illegal packer, or to set the mechanical packer at anything other than the permitted

depth. He testified that Grandfield conducted a mechanical integrity test on December 27, 2010; the test report lists a packer only at 4492 feet. Grandfield pointed to testimony of expert witness Jason Foster about the effects of water chemistry, heat, and pressure on the steel and cement in the well as a cause of the corrosion of the well over time. Grandfield notes that no expert testified directly that the violation of Railroad Commission rules was a proximate cause of SWD5's failure.

Ivory points to the evidence that the EE packer was installed before Ivory was the operator, that it did not install a packer or do a workover, and that the breakout undisputedly occurred three-and-a-half years after Ivory transferred operations to another entity. Ivory's president, Kerry Krottinger, testified that the wellbore diagram someone at his company created on June 1, 2011 was "not current" saying, "The whole thing is a mistake." Krottinger testified that an EE packer "could not perform its task at any depth." Krottinger said Ivory relied on other documents in the well file, which included certified reports filed with the Railroad Commission that did not include the EE packer.

Memorial points to evidence that it (and Boaz) did not install the EE packer and did not know about the EE packer. Appellants' expert Foster testified that he believed that the EE packer was installed sometime between December 2010 and June 2011—years before Memorial began operating the well. Grandfield was the operator when C.C. Forbes performed a workover. C.C. Forbes's then-rig operator, Raul Baltazar, testified in his deposition explaining his notes on a field ticket he prepared to invoice the work done on December 20, 2010. Baltazar testified that C.C. Forbes installed a new mechanical packer at 3800 feet in the well on December 20, 2010; he based the depth on the 119 joints of tubing inserted above the

31

packer, though he testified that the joints were of varying lengths. Baltazar testified that the mechanical packer initially did not hold when the well was pressurized, so they pulled eight joints out of the well and installed a metered bull plug at the top of the well to help monitor the pressure in the well; he testified that the plug did not affect the packer depth. Baltazar testified that the mechanical packer eventually held when the well was pressurized. He testified that the mechanical packer at 3800 feet was the only packer C.C. Forbes installed; he did not recall installing a shallower packer and did not (and could not have) installed the bull plug in the ground.

Memorial notes that, after Grandfield's December 27, 2010 mechanical integrity test that was reported to the Railroad Commission on December 29, 2010, on form H-5, the next test was not due for five years—after the breakout occurred. The H-5 form states that the mechanical packer was placed at 4499 feet and did not list an EE packer. Memorial notes that wellbore diagram—the only document in the well file indicating the existence of the EE packer—was inconsistent with C.C. Forbes's field ticket and documents filed with the Railroad Commission that do not mention the EE packer. Though Krottinger testified that he understood that Appellants had "admitted" that C.C. Forbes did *not* install the EE packer, the wellbore diagram has a well-maintenance history entry dated December 20, 2010, that states: "Repl Pkr. EE 8 jts down." That date is when C.C. Forbes did the workover on the well, and eight joints is the number of joints Baltazar testified they pulled while doing the workover. Memorial contends that the only way it could have verified the information in the well file was to pull the entire tubing configuration out of the ground—an act Krottinger testified was expensive and not normal. Memorial also notes that, though it exceeded daily pumping limits in September

32

2014, it had not exceeded the monthly limit when the breakout occurred. Memorial refers to Foster's testimony that the condition of the wellbore was due to conditions over a longer term than the 17-day period during which it overpumped saltwater.

Viewing the evidence favoring the adverse finding in the light most favorable to the verdict as we must when analyzing legal sufficiency, *see City of Keller*, 168 S.W.3d at 819, we conclude that more than a scintilla of evidence supports the jury's failure to find that any negligence by appellees caused the damages to Appellants.

In their reply brief, Appellants list evidence that they urge overwhelms evidence cited by appellees.[11] Appellants contend that appellees did not dispute that Railroad Commission regulations forbid installation of multiple packers and forbid installation of a packer above 350 feet below the surface, and that appellees operated SWD5 with an improper EE packer at about 260 feet below the surface. *See* 16 Tex. Admin. Code § 3.46(g)(1) (2023)[12] (R.R. Comm'n, Fluid Injection into Productive Reservoirs). Appellants also contend that the improper packer masked defects below it by masking the pressure. Nicholas Eldridge, who was Memorial's production foreman at the time of the Railroad Commission's investigation,

---

[11] Appellees urged that, because Appellants did not include specific record references in their discussion in the evidentiary-sufficiency section of their initial brief, we should hold that Appellants waived this issue through inadequate briefing. *See* Tex. R. App. P. 38.1(i); *NexPoint Advisors, L.P. v. United Dev. Funding IV*, 674 S.W.3d 437, 446-47 (Tex. App.—Fort Worth 2023, pet. filed) (citing *Fredonia State Bank v. General Am. Life Ins. Co.*, 881 S.W.2d 279, 283-84 (Tex. 1994)). Appellants' recitation of the facts of the case included many record references, though their discussion of the sufficiency-of-the-evidence issue did not. This placed appellees at some disadvantage to know on what particular evidence Appellants relied for their evidentiary sufficiency challenges. Because of the recitation in the opening brief and the greater specificity in the reply brief, we will address the merits of their appellate complaint.

[12] This regulation appears to have been the same through all relevant times in this case.

33

testified at his deposition that only a few hundred feet of tubing were retrievable and that he did see an EE packer at about 260 feet. Other witnesses—including experts Jeffrey Hughes and Foster—confirmed that the tubing and casing had deteriorated. Hughes testified that a hole likely developed around 400 feet down, causing injected fluids to bore a hole in the casing and break out. He said that Memorial could have noticed a discrepancy from the pressures they would expect to accompany the increased volumes of fluid they were injecting but the EE packer masked the true pressure. Appellants also note that the wellbore diagram states that the mechanical packer is at 3727 feet rather than the 4492 reported in filings with the Railroad Commission. Krottinger testified that the mechanical packer should be within one hundred feet of where injections were occurring which, according to the wellbore diagram, were happening at 4576 feet. Memorial exceeded the 6,000 barrels a day its permit allowed to be injected for nine of the seventeen days preceding the breakout, injecting 7372 barrels on September 24, 2014—the day of the breakout.

The jury was charged with deciding the credibility of witnesses and determining what acts or omissions were a "substantial factor" in causing the damage to Appellants. It may have concluded that installation of the EE packer was the sole proximate cause of the breakout and that Appellants failed to prove by a preponderance of the evidence that any of the appellees installed it. Appellees denied installing the EE packer, and no direct evidence contradicts their denials. While the wellbore diagram indicates the EE packer was installed on the date that C.C. Forbes did the workover, C.C Forbes's Baltazar denied installing it. Appellants asserted that Grandfield installed it or authorized its installation, leading to the well's eventual failure, and that the continued operation of the injection well by all appellees when the installation of

34

the packer was noted on the wellbore diagram was also a proximate cause of the breakout. They argue that the failure to include the EE packer information from the wellbore diagram in filings with the Railroad Commission added another layer of proximate cause. They argue that the appellees' copying and filing of inaccurate information regarding packers further masked the EE packer's masking of the problems in the well. The jury, however, saw and heard the witnesses, assessed their credibility, and found that Appellants did not prove by a preponderance of the evidence that appellees' negligence proximately caused Appellants' damages. We conclude that Appellants have not shown that the great weight and preponderance of the evidence is against jury's adverse finding regarding appellees' negligence and thus that the evidence is factually sufficient to support the judgment.

## VII.    Appellate issues mooted by preceding resolutions

Our resolutions of these issues in support of the jury's verdict that did not find appellees liable for damages to the Lees render Appellants' remaining appellate claims moot or render harmless any remaining errors asserted. Appellants complained of the summary-judgment ruling that the Lees' partnership and children lack standing to pursue these claims, but their theories of recovery did not differ from those of the Lees and there is no showing that they would have provided different evidence had they remained parties to the case; the claims of the partnership and children would fall on the same bases even if they had remained in the suit. The affirmance of the non-liability finding renders harmless any error in decisions concerning the non-exclusivity of claims for property damage and personal losses, the exclusion of evidence on damages related to the Herring ranch, the applicability of joint and several liability and the divisibility of damages, and the directed verdict on Appellants' gross-negligence claim. Tex. R. App. P. 47.1 (opinions

35

address issues raised and necessary to final disposition of appeal); *see Crawford v. Hope*, 898 S.W.2d 937, 943 (Tex. App.—Amarillo 1995, writ denied) (affirmance of non-liability moots damages-related issues); *Douglas v. Hardy*, 600 S.W.3d 358, 372 (Tex. App.—Tyler 2019, no pet.) (negligence finding is prerequisite for gross negligence).

## CONCLUSION

We affirm the trial court's judgment.

_____
Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Triana and Theofanis

Affirmed

Filed:   February 29, 2024